## JAMES K. HARNEY v. A. J. WIRTZ et al.

(152 N. W. 803.)

**Contracts — construction — rules of — intent of parties — expressed in words of contract — governs.**

1. The first and main rule for the construction of contracts is that the intent of the parties as expressed in the words they have used must govern.

**Written contracts — intent ascertained therefrom.**

2. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.

**Contracts — interpretation — subject-matter — intended by parties.**

3. The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping interpret the others; but, however broad may be the terms of the contract, it extends only to those things concerning which it appears that the parties intended to contract.

**Contracts — clauses — subordinate to general intent — inconsistent words — rejection.**

4. Particular clauses of a contract are subordinate to its general intent;

and words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected.

**Chattel mortgage — real estate mortgage — habendum clause — default — power of sale.**

5. L. executed to H. a chattel mortgage upon the crop grown during the year 1904 on certain described real estate owned by the mortgagor. The granting clause was of "all the crops of every kind and description including hay," etc. Following the description of the real estate on which the crops were to be grown was the following statement: "And it is mutually covenanted and agreed that this mortgage is a charge and lien on said real estate until said debt hereby secured is paid, and said lien may be foreclosed in the same manner as other mortgages on real estate." The instrument was expressly named a chattel mortgage both at the top and on the oack thereof. The habendum covered only the "personal property aforesaid," and all the provisions relating to the care and custody of the property, conditions of default, power of sale, and the sale, were confined to the personal property *Held*, that the instrument did not constitute a mortgage on real estate, but constituted only a chattel mortgage.

**Parol evidence — to contradict terms of mortgage — admissibility.**

6. Parol evidence is not admissible to contradict or vary the terms of a mortgage.

**Written contracts — recites actual agreement — presumption — prior conversations — to vary terms.**

7. When a contract is reduced to writing, the presumption is that the entire actual agreement of the parties is contained in it, and parol evidence as to their negotiations or conversations prior to its execution is not admissible to vary or explain it.

**Secret intention — contract — expressed intention prevails.**

8. The secret intention of the parties, if different from the expressed intention, will not prevail, as the law looks to what the parties said as expressing their real intention.

**Patent ambiguity — inherent uncertainty — face of instrument — appearing on — when arises.**

9. A patent ambiguity is an inherent uncertainty appearing on the face of the instrument, and arises at once on the reading of the instrument.

**Latent ambiguity — not apparent on face of instrument — collateral matter.**

10. A latent ambiguity is an uncertainty which arises not by the terms of the instrument itself, but is created by some collateral matter not appearing in the instrument.

**Intention — clearly expressed — latent ambiguity.**

11. When the intention of a party or parties is clearly expressed, and a doubt exists, not as to the intention, but as to the object to which the intention applies, it is a latent ambiguity.

**Parol evidence — chattel mortgage — intended as mortgage on real estate — admissibility — action to foreclose.**

12. Parol evidence to show that the chattel mortgage set forth in ¶ 5 of this syllabus was intended to be a mortgage on the realty was not admissible in an action for the foreclosure of such mortgage, brought by H. against subsequent encumbrancers or purchasers without notice.

Opinion filed March 31, 1915.

From a judgment of the District Court of Benson County, *K. E. Leighton,* Special Judge, defendants appeal.

Reversed.

*Middaugh, Cuthbert, Smythe, & Hunt,* for appellants.

The habendum clause in the mortgage relates entirely to the *chattel mortgage feature* of the instrument. The entire instrument is merely a chattel, and not a real estate mortgage. Mortgage Bank & Invest. Co. v. Hanson, 3 N. D. 465, 57 N. W. 345.

A written contract supersedes all prior or accompanying oral negotiations touching its subject-matter. Rev. Codes 1905, §§ 5333, 6153, Comp. Laws 1913, §§ 5889, 6729; National German American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; N. D. Comp. Laws, 1913, § 3545; Thompson v. McKee, 5 Dak. 176, 37 N. W. 367; Northwestern Fuel Co. v. Burns, 1 N. D. 137, 45 N. W. 699; Jasper v. Hazen, 4 N. D. 2, 23 L.R.A. 58, 58 N. W. 454; Northwestern F. & M. Ins. Co. v. Lough, 13 N. D. 601, 102 N. W. 160; Wells v. Geyer, 12 N. D. 316, 96 N. W. 289.

Defendant's motion to dismiss, made at conclusion of plaintiff's case, should have been granted. Plaintiff had failed to make a prima facie case or to prove the material allegations of the complaint. A certified *copy* of the *record* of a mortgage is not the best evidence. It is *no* evidence when it appears that the original instrument is in the possession of the witness testifying. Rev. Codes 1905, § 7297, Comp. Laws 1913, § 7916; American Mortg. Co. v. Mouse River Live Stock Co. 10 N. D. 290, 86 N. W. 965.

There is also a failure to allege or prove facts to negative other proceedings. Rev. Codes 1905, Subdiv. 1, §§ 6859, 7480, Comp. Laws 1913, §§ 7448, 8103.

A man having a first lien on chattels and real property, knowing of a second lien upon the real property, must proceed with the chattel

security in such manner as to make as much as possible out of it, to the end that the burden of his prior mortgage on the land may be thereby lessened. This is what common honesty demands. Union Nat. Bank v. Moline, M. & S. Co. 7 N. D. 201, 73 N. W. 527.

In a suit in equity, the rights of the parties are fixed as of the date of the judgment. In an action at law, such rights are determined as of the date of the trial or verdict. Brown v. Newman, 15 N. D. 1, 105 N. W. 941.

In this case no compound interest should have been computed or allowed. In any event, interest cannot be compounded where to do so will make a greater annual rate than 12 per cent. Rev. Codes 1905, §§ 5511, 6722, Comp. Laws 1913, §§ 6073, 7310.

*T. H. Burke,* for respondent.

The habendum clause may limit, restrain, lessen, enlarge, explain, vary, or qualify, but not totally destroy or contradict or be repugnant to, the estate granted in the premises, but if the habendum be repugnant to the grant, the former will be controlled by the manifest intent and terms of the latter. 13 Cyc. 619; 2 Devlin, Deeds, 3d ed. 1, 1531; 1 Devlin, Real Estate & Deeds, § 213, p. 309.

The granting clause in a deed must prevail over the habendum unless the contrary intention is shown by the deed. 1 Devlin, Real Estate & Deeds, § 214, p. 309; French v. Carhart, 1 N. Y. 102; McConnell v. Rathbun, 46 Mich. 305, 9 N. W. 526; Wilson v. Terry, 130 Mich. 73, 89 N. W. 567; Farquharson v. Eichelberger, 15 Md. 63.

The validity of a mortgage on real estate is not affected by the fact that it also pledges personal property. Harriman v. Woburn Electric Light Co. 163 Mass. 85, 39 N. E. 1004.

An instrument is a mortgage where the intention is clear to charge certain property as *security* for the payment of a debt, and contains nothing impossible or contrary to law. 27 Cyc. 985; Jasper v. Hazen, 4 N. D. 2, 23 L.R.A. 58, 58 N. W. 454; Standorf v. Shockley, 16 N. D. 73, 11 L.R.A.(N.S.) 869, 111 N. W. 622, 14 Ann. Cas. 1099; Rev. Codes 1905, § 6153, N. D. Comp. Laws 1913, § 6729; Northwestern F. & M. Ins. Co. v. Lough, 13 N. D. 601, 102 N. W. 160; Wells v. Geyer, 12 N. D. 316, 96 N. W. 289.

Parol evidence is always admissible, either between the original or third parties, to explain an ambiguity in the written instrument. 17 Cyc. 640, 662; 9 Cyc. 470; Columbus Sewer Pipe Co. v. Ganser, 58

Mich. 385, 55 Am. Rep. 697, 25 N. W. 378; Mayo v. Murchie, 3 Munf. 358; Sturges v. Detroit, G. H. & M. R. Co. 166 Mich. 231, 131 N. W. 709; Ferris v. Wilcox, 51 Mich. 105, 47 Am. Rep. 551, 16 N. W. 252; Rundle v. Scully, 144 Mich. 62, 107 N. W. 694; Bedford v. Kelley, 173 Mich. 492, 139 N. W. 252, Ann. Cas. 1914D, 848; 32 Cyc. 40; Big Rapids Nat. Bank v. Peters, 120 Mich. 518, 79 N. W. 891; R. L. Polk Printing Co. v. Smedley, 155 Mich. 249, 118 N. W. 984; Colean Implement Co. v. Strong, 126 Iowa, 598, 102 N. W. 506; Smith v. McLean, 24 Iowa, 322; Weber v. Illing, 66 Wis. 79, 27 N. W. 834; Sheehey v. Fulton, 38 Neb. 691, 41 Am. St. Rep. 767, 57 N. W. 395; Ripon College v. Brown, 66 Minn. 179, 68 N. W. 837.

If the language used presents a patent ambiguity as to its meaning, such evidence is always admissible. Baldwin v. Winslow, 2 Minn. 213, Gil. 174; Case v. Young, 3 Minn. 209, Gil. 140; Kelly v. Bronson, 26 Minn. 359, 4 N. W. 607.

Resort is frequently made to such evidence, or to such method of proof, not to vary the terms of the written contract, but to throw light upon the *meaning* of the terms used, as *intended* by the parties. Hazelton Boiler Co. v. Fargo Gas & Electric Co. 4 N. D. 365, 61 N. W. 151.

Wirtz brothers took the mortgage and their interest in the premises, with full knowledge of the plaintiff's mortgage. They cannot rely upon a mistake in law, as to the legal effect of an instrument. Knowledge of the *facts* is sufficient to charge them. 27 Cyc. 1186; Fullerton Lumber Co. v. Tinker, 22 S. D. 427, 118 N. W. 700, 18 Ann. Cas. 11.

It is only necessary for a person holding the prior mortgage to resort first to property upon which his lien is exclusive, when he can do so without risk of loss to himself, or of injustice to others, and *then only* upon the *demand* of a party interested. Rev. Codes 1905, § 2033, Comp. Laws 1913, § 2743; McIlvain v. Mutual Assur. Co. 93 Pa. 30; Groesbeck v. Mattison, 43 Minn. 547, 46 N. W. 135.

Christianson, J. This is an action for the foreclosure of a mortgage. The plaintiff obtained judgment in the court below for a foreclosure of the mortgage, and the defendant appeals from the judgment and asks for a trial *de novo* in this court. The only question presented in this case arises upon the construction of the mortgage sought to be foreclosed, which is in words and figures as follows:

CHATTEL MORTGAGE.                    Great Western Ptg. Co., Minneapolis.

**Know all Men by these Presents,** That I,..........*Carl O. Lindemann*,..........*a single man*....Mortgagor of the Town of....*155*....Range....*69 w*....in the County of *Benson*,....State of North Dakota, being justly indebted to....*James K. Harney*,....Mortgagee, in the sum of.............*Three hundred seventy seven*.............DOLLARS, have, for the purpose of securing the payment of said debt, Granted, Bargained, Sold, and Mortgaged, and by these presents do Grant, Bargain, Sell, and Mortgage, unto the said....*James K. Harney*,....all the crops of every kind and description, including hay, which have been or may hereafter be grown, sown, cultivated, cut or harvested, during the years A. D. ....*1904*,....and until said debt is fully paid, on the following described real estate, to-wit....*The North east quarter (N. E. ¼). Section thirty-two (32) in township one hundred fifty-five (155) north of Range sixty-nine. (69) west of the 5 P. M., in Benson County*,..............................State of North Dakota.

And it is mutually covenanted and agreed, that this mortgage is a charge and lien on said real estate, until said debt hereby secured is paid, and said lien may be foreclosed in the same manner as other mortgages on real estate.

And in case of failure to properly sow, cultivate, harvest or care for said crop, the said Mortgagee is hereby authorized to enter on said land and do all that is necessary to properly sow, harvest or care for such crops at my expense, and apply the net amount realized therefrom in the payment of said indebtedness. And personal property as follows, to-wit:......................................................................................

*One grey mare named "Belle" age about 10 years, weight about 1,150 lbs.;*..............

*One bey mare white strip in face named "Maud" age about 10 years, weight about 1,150 lbs.;*..............................................................................

*One dark brown mare, white star in forehead, named "Maud," age about 14 years, weight about 1,200 lbs.;*......................................................................

*One new Western King wagon, wide tiers complete with double box, neckyoke, and whipple trees.*................................................................

And all increase of above stock until the debt hereby secured is fully paid. And I hereby covenant that all of said property is now in my possession in the county and State aforesaid, and free from all incumbrance......................:................................

TO HAVE AND TO HOLD ALL AND SINGULAR, The personal property aforesaid, Forever, as security for the payment of the note and obligations hereinafter described; Provided, always, and these presents are upon this express condition, That is the said Mortgagor shall pay or cause to be paid unto the said Mortgagee, his executors, administrators, or assigns, the sum of..*Three hundred seventy-seven*..DOLLARS, according to the conditions of...*one*...certain promissory note payable to..*James K. Harney*,..viz., $..*377.00*..dated..*June 14, 1904*..due..*Oct. 15, 1904*,..with interest at 12 per cent per annum until paid

$..........dated..........due..........with interest at 12 per cent per annum until paid
$..........dated..........due..........with interest at 12 per cent per annum until paid
$..........dated..........due..........with interest at 12 per cent per annum until paid
$..........dated..........due..........with interest at 12 per cent per annum until paid

Or any other note of said Mortgagor given hereafter to the Mortgagee herein, as renewal hereof, then these presents to be void and of no effect. But if default shall be made in the payment of said sum or sums of money, or the interest thereon, at the time the said note or notes shall become due, or if any attempt shall be made by the said Mortgagor or any other person to dispose of or injure said property or to remove said property or any part thereof, from said county of..*Benson*,..or if said Mortgagor does not take proper care of said property, or if said Mortgagee shall at any time deem himself insecure; then thereupon and thereafter, it shall be lawful, and the said Mortgagor hereby authorizes said Mortgagee, his executors, administrators, or assigns, or his authorized agent, to take said property wherever the same may be found, and hold or sell and dispose of the same and all equity of redemption at public auction, with notice as provided by law, and on such terms as said Mortgagee or his agent may see fit, retaining such amount as shall pay the aforesaid note or notes and interest thereon and an attorney's fee of five dollars, and such other expenses as may have been incurred, returning the surplus money, if any there may be, to the said Mortgagor or his assigns, and said Mortgagor hereby further authorizes said Mortgagee, his executors, administrators, or assigns, or his authorized agents, if he so elect, to sell the crops herein mortgaged when harvested, in any usual market therefor, at any time, in the usual manner, at the market price thereof in such market and without the notice provided by law. And so long as the conditions of this mortgage are fulfilled, the said Mortgagor to remain in peaceful possession of said property, and in consideration thereof he agrees to keep said property in as good condition as it now is, at his own cost and expense.

IN TESTIMONY WHEREOF the said Mortgagor has hereunto set....*his*....hand and seal this....*14th*....day of....*June*....A. D. 1904.

Signed, Sealed and Delivered in the Presence of      }      ..........*Carl O. Lindemann*..........
....................*Geo. Duncan*....................
....................*A. O. S. Karsten*....................      ................................ [SEAL]

State of North Dakota,   ⎱
                      ⎰ ss.
County of............*Benson*............⎰

On this......*14th*......day of......*June*......in the year one thousand nine hundred ..............*four*..............before me................*George Duncan*................a Notary Public in and for said County and State, personally appeared....*Carl O. Lindemann,*.... ....*an unmarried man,*...........................................................................................................

..........................................................................................................................................................

known to me to be the same person who....*is*....described in, and who executed the foregoing and within instrument, and acknowledged that he executed the same.

                               ................*George Duncan*................

                                    *Notary Public, Benson Co.,*
Notary Public......*North Dakota,*......County, N. D.
                                  *My Commission expires Aug. 10, 1908.*

---

R. E. No. **17547**   G. N. C.

## Chattel Mortgage

C. M.   No. **49465**

....*CARL O. LINDEMANN*....

TO

**J. E. TRUESDELL.**

....*JAMES K. HARNEY*....

**Office of Register of Deeds**

County of...*Benson*....North Dakota.

I hereby certify that the within instrument was filed in this office for record on the ..*14*.day of..*June*..A. D. 1904 at...*2*...o'clock..*P*..M., and was duly entered in Book *1904* *and recorded in Book 133 of* *Mtges., Page 453*..............

            *Geo. Dickinson*............
         Register of Deeds.

By.....*A. O. S. Karsten*......
                Deputy.

**Office of Register of Deeds**

County of......North Dakota.
I hereby certify that I have compared the within instrument with the original Mortgage No.....now on file in my office, and that it is a true and correct copy of the same, and the whole thereof, and that the above is a true copy of the filing thereon.
Dated........190

.........Register of Deeds.

By  ......................
                Deputy.

Chd. 1.75

This instrument was duly signed, witnessed, and acknowledged, and on the 14th day of June, 1904, was recorded as a real estate mortgage in the office of the register of deeds of Benson county, and also filed in that office as a chattel mortgage.

On September 8, 1904, Lindeman gave a mortgage upon the land described in the mortgage above set forth, to the Minneapolis Threshing Machine Company to secure the payment of $3,085. This mortgage, it is conceded, was a regular real estate mortgage in usual form, containing the stipulations, covenants, and conditions usually contained in such mortgages in this state, including a good and sufficient power of sale. This mortgage was recorded in the office of the register of deeds of Benson county on September 12, 1904, and was duly assigned by the mortgagee named herein, to the defendants, Wirtz Brothers, by a written assignment in regular form, dated June 14, 1907, and recorded in the office of the register of deeds of Benson county on August 14, 1907. It is conceded that this last mortgage was duly foreclosed in the manner provided by law, and a sheriff's deed duly issued thereon to the defendants, Wirtz Brothers, on the 6th day of October, 1908, and recorded in the office of the register of deeds of Benson county on October 13, 1908.

The plaintiff brought this action in equity to foreclose the mortgage given to him by Lindeman upon the realty alone,—no foreclosure of the mortgage upon the chattels being asked for. The defendants, Wirtz Brothers, first demurred to the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and these defendants, thereupon answered, stating, in substance, that they were the owners of the premises, and that the mortgage set forth in plaintiff's complaint was only a chattel mortgage upon the personal property therein described, and did not constitute a lien on the realty, and also that the plaintiff had permitted the personal property to be dissipated and disposed of by Lindeman after the defendants, Wirtz Brothers, had notified the plaintiff to satisfy his mortgage out of the personal property. It will be unnecessary for us, however, to consider the latter defense, because in our judgment the controlling question—and really the only question presented for our consideration—arises upon the construction of the mortgage held by the plaintiff and sought to be foreclosed by this action. Does the in-

strument in question constitute a mortgage upon the land therein described; or does it only constitute a chattel mortgage? This is the prime question submitted to this court for determination.

(1) "The law furnishes certain rules for the construction of written contracts for the purpose of ascertaining from the language the manner and extent to which the parties intended to be bound; and those rules should be applied with consistency and uniformity; and it is not proper for a court to vary, change, or withhold their application. *The first and main rule of construction is that the intent of the parties as expressed in the words they have used must govern.* Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. If the words clearly show the intention, there is no need for applying any technical rules of construction, for where there is no doubt there is no room for construction." 9 Cyc. 577.

(2–4) The law relative to the construction of contracts, as stated above, has been in substance enacted into, and become a part of, the statutory law of this state. Sections 5895–5921 of the Compiled Laws of 1913 furnish a complete guide for the interpretation of contracts.

Section 5896 provides: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful." Section 5897 provides that, "for the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied." Among the rules governing the interpretation of contracts enumerated are the following: "The language of a contract is to govern its interpretation if the language is clear and explicit, and does not involve an absurdity." Comp. Laws, § 5898. *"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible,* subject, however, to the other provisions of this article." Comp. Laws, § 5899. "The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Comp. Laws, § 5901. Section 5904 provides that words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to

them by usage; and § 5905 provides that technical words are to be interpreted as usually understood by persons in the profession or business to which they relate unless clearly used in a different sense. *"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."* Comp. Laws, § 5908. "Particular clauses of a contract are subordinate to its general intent." Comp. Laws, § 5910. "Words in a contract which are wholly inconsistent with its nature or with the main intention of the parties are to be rejected." Comp. Laws, § 5913. Section 5911 provides that when a contract is partly written and partly printed, the written parts control the printed parts. By applying the rules of interpretation provided by the Codes of this state, to plaintiff's mortgage, we have no serious difficulty in reaching a conclusion in this case.

(5) The instrument in question has every element of a chattel mortgage, and in fact it is expressly labeled a chattel mortgage, not only at the top of the instrument itself, but also on the back thereof. There is absolutely nothing about the instrument to indicate that its purpose was to mortgage realty, unless the single clause, appearing as a part of the clause relative to crop mortgages, be so construed.

The name of the instrument, its appearance, and contents are those of a chattel mortgage. The whole nature, tenor, and purport thereof is that of a chattel mortgage. The main intention of the parties as manifested by the terms of the contract itself was to create a chattel mortgage. The term "chattel mortgage" has not only a technical and strict legal meaning, but has also a well-understood meaning in an ordinary and popular sense. In both instances, however, it is understood to refer to a mortgage upon chattels only; and it is never understood to mean a lien upon real property. The instrument under consideration was expressly named, "chattel mortgage." We venture to say that not one person in a thousand signing the mortgage in question would have known that it was intended to mortgage realty. The instrument by its name, appearance, and general contents would unquestionably convey to the person executing it the idea that he was signing only a chattel mortgage. The granting clause in the instrument is: "That I . . . by these presents do grant, bargain, sell, and mortgage unto the said James K. Harney, all the crops of every kind and description, including hay which had been or may hereafter be grown, sown, cultivated, cut, or harvested

during the years of 1904, and until said debt is fully paid on the following described real estate, to wit: The Northeast quarter (N.E.$\frac{1}{4}$) section thirty two (32) in township one hundred fifty-five (155) north, of range sixty-nine (69) west of the 5th P. M. in Benson county, state of North Dakota." Then follows the statement: "That this mortgage is a charge and lien on said real estate until said debt hereby secured is paid, and said lien may be foreclosed in the same manner as other mortgages on real estate." Immediately following this statement is a continuation of the crop mortgage clause, providing that in case of failure to properly sow, cultivate, harvest, and care for said crop that the mortgagee be authorized to do so, etc. It will be observed that the mortgage in question nowhere says that the mortgagor grants or mortgages the realty. The provisions relative to the power of sale, the conditions relative to default, and in fact all the conditions and stipulations in the body of the mortgage are confined exclusively to the chattel property, and are those usually found in a chattel mortgage in this state, and by their plain and unmistakable terms can have no possible application to the realty . The habendum clause in the mortgage says: "To have and to hold all and singular, the personal property aforesaid, forever as security for the payment of the note and obligations hereinafter described."

While it is true that the habendum clause is not of the same importance that it used to be, still "the habendum may limit, restrain, lessen, enlarge, explain, vary, or qualify, but not totally  contradict or be repugnant to the estate granted in the premises. . . ." 13 Cyc. 619. The whole of the instrument is to be taken together (§ 5901 Comp. Laws), and the particular clauses are subordinate to its general intent (§ 5910 Comp. Laws) ; and regardless of however broad may be the terms of the contract, it extends only to those things concerning which it appears that the parties intended to contract  (§ 5908 Comp. Laws), and the words in the contract which are wholly inconsistent with its nature or with the main intention of the parties are to be rejected. (§ 5913 Comp. Laws). The instrument under consideration, when so construed, is clearly what it is named, _viz._, a chattel mortgage, and nothing more, and does not in any sense constitute a mortgage on realty. An instrument almost identical in language was construed by this court in the case of Mortgage Bank & Invest. Co. v. Hanson, 3 N. D. 465, 57 N. W. 345, to be a chattel mortgage. The reasons advanced

for the court's decision in that case apply equally in this case. We consider that decision sound in principle, and entirely approve of the doctrine promulgated thereby.

(6–8) Upon the trial, the plaintiff introduced testimony relative to conversations had at and prior to the execution of the mortgage, to show that the plaintiff and Lindeman intended the mortgage set forth in the plaintiff's complaint to be a mortgage, not only upon the personal property, but also upon the real property. This testimony was all objected to upon proper grounds by the attorneys for the appellants. Respondent's counsel contends that this testimony was admissible for the purpose of showing the intention of the parties. We are unable to agree with respondent's counsel in this contention, and are satisfied that it is necessary to arrive at the intention of the parties from the instrument itself. Comp. Laws, § 5899; Miller v. St. Paul F. & M. Ins. Co. 26 S. D. 45, 128 N. W. 709. It is obvious that any intent or ideas existing in the minds of the contracting parties, or dependent upon oral understandings between them, was not in any manner made a matter of record by the recording of plaintiff's mortgage. The only notice with which defendants were chargeable was that given by the record itself. The question is whether or not the instrument involved mortgages both real and personal property or only personalty. To permit parol testimony to be admitted to add something to the mortgage which does not appear on its face, would be in effect to permit the plaintiff in this case to establish an oral mortgage on realty. There is no evidence that the appellants had any actual knowledge or notice of the mortgage, or of any intent on the part of the parties thereto not contained in the mortgage. All the evidence tends to show that the only notice the appellants had is such as was imputed to them from the records. If respondent's position is sustained, the recording acts would be of no value. The records are notice of what is there shown,—no more, no less; and all persons are chargeable with knowledge of the facts shown by the records. Either the mortgage involved mortgaged the realty or it did not; and, as we view the matter, any secret intention in the minds of the parties can neither add to, nor detract from, the notice imparted to innocent third parties by the record of the mortgage in question. "The secret intention of the parties, however, if different from the expressed intention, will not prevail, as the law looks to what the parties said as expressing

their real intention." 9 Cyc. 578. "Parol evidence is not admissible to contradict or vary the terms of a mortgage. When a contract is reduced to writing, the presumption is that the entire actual agreement of the parties is contained in it; and parol evidence as to their negotiations or conversations prior to its execution is not admissible to vary or explain it." 27 Cyc. 1136.

(9–12) Respondent's counsel further contends that the mortgage is ambiguous, and that parol evidence was admissible to explain the ambiguity. It is true that parol testimony is admissible in certain cases to explain an ambiguity in a written instrument, but it has no application in this case. The rule (relative to admission of such evidence) was laid down by Lord Bacon, that a latent ambiguity may be explained by extrinsic evidence, but that a patent ambiguity may not. And although this general distinction has sometimes been criticised by the courts, and for that reason it is necessary to examine the statement closely in order to see what it really means and how far it is a correct exposition of law, still it has been very generally accepted by the courts as correct. A latent ambiguity is defined by Lord Bacon to be "that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." The following definition of latent ambiguity is given by Cyc.: "A latent ambiguity arises when the writing upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain. . . . It is to be observed, however, that while parol evidence may be admitted in explanation where there is a latent ambiguity, it can do no more than explain the doubtful expressions of the instrument consistently with the relations of the parties and the other incidents of the contract. *The rule that where an ambiguity is created by parol it may be removed by parol was never intended to violate the rule that a writing shall not be contradicted or explained by inferior testimony.* If, therefore, when an ambiguity is created by parol, the instrument itself removes the ambiguity, it cannot be controlled." 17 Cyc. 676. A patent ambiguity has also been defined as follows: "A patent ambiguity is an uncertainty that arises at once on the reading of the contract. We do not have to wait until some other fact is brought to our knowledge before the uncertainty is apparent, but the doubt is suggested at once and

by the phrase itself. A patent ambiguity is one that appears on the face of the instrument, and that which occurs when the expression of an instrument is so defective that a court of law which is obliged to put a construction on it, placing itself in the situation of the parties, cannot ascertain what they meant. A patent ambiguity appears on the face of the instrument, while a latent ambiguity is raised by evidence." Jones, Ev. § 473. Justice Story in discussing this proposition said: "Nothing is clearer than the general rule,—latent ambiguities may be removed by parol evidence, for they arise from the proof of facts *aliunde;* and where the doubt is created by parol evidence, it is reasonable that it should be removed in the same manner. *But patent ambiguities exist in the contract itself; and if the language be too doubtful for any settled construction, by the admission of parol evidence you create, and do not merely construe, the contract. You attempt to do that for the party which he has not chosen to do for himself; and the law very properly denies such an authority to courts of justice."* Peisch v. Dickson, 1 Mason, 9, Fed. Cas. No. 10,911. "In other words, and more generally speaking, if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties *from the language of the instrument thus illustrated,* it is a case of incurable and hopeless uncertainty; *and* the instrument is so far inoperative and void; *and it cannot be sustained or rendered operative by the introduction* of evidence which would necessarily have the effect of adding new terms to the writing." 17 Cyc. 682.

Black's Law Dictionary says: "An ambiguity may be either latent or patent. It is the former, where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings. But a patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used." Anderson's Dictionary of Law gives the following definitions: *"Patent ambiguity:* Such ambiguity as appears upon the face of the writing itself. *Latent ambiguity:* Where a writing is perfect and intelligible upon its face, but, from some circumstances admitted in proof, a doubt arises as to the

applicability of the language to a particular person or thing. *Ambiguitas patens* is that which appears to be ambiguous upon the instrument. *Ambiguitas latens* is that which seems certain and without ambiguity for anything that appears upon the instrument, but there is some collateral matter out of the deed that breeds the ambiguity." Stroud's Judicial Dictionary gives the following clear statement regarding the matter, *viz.*: "There are two kinds of ambiguity: First, where the ambiguity arises from the fact that the parties have expressed inconsistent intentions on the face of the deed. An ambiguity of this class is apparent to any person perusing the deed, even if he be unacquainted with the circumstances of the parties; and is called a 'patent ambiguity.' Second, where no ambiguity is apparent to a person perusing the deed until, on obtaining evidence of the circumstances of the parties, it is discovered that there are several persons or things, or classes of persons or things to each of which a name or description contained in the deed seems to be equally applicable. An ambiguity of this class is called a 'latent ambiguity,' or an 'equivocation.'"

The ambiguity arising in this case—if there is one—is an inherent uncertainty appearing on the face of the instrument, and arises from the defective, obscure, or insensible language used. It seems clear that no ambiguity exists which can be explained by parol. The only doubt existing in this case, if any, is as to the intention of the parties. This is not such an ambiguity as can be explained by parol. When the intention of the parties is clearly expressed, and a doubt exists, not as to the intention, but as to the object to which the intention applies, it is a latent ambiguity. The evidence offered by plaintiff was not to explain an ambiguity, but merely to add something to the contract. The purpose of the evidence was to convert a chattel mortgage into a real estate mortgage. This is not explaining an ambiguity, but varying the terms of a written contract and creating a new contract by parol entirely different and variant from the written contract. We are entirely satisfied that this evidence was wholly inadmissible. Comp. Laws, § 5889; First State Bank v. Kelly, ante, 84, 152 N. W. 125. "The description in the mortgage as to the property included therein and intended to be covered thereby is conclusive, and parol or extrinsic evidence is not admissible to contradict, add to, or vary the same by showing the intention of the parties in this respect to have been other than that expressed by

the instrument." 17 Cyc. 628. See also 27 Cyc. 1137; 9 Enc. Ev. 466, 467.

It is seriously contended by appellants' counsel that the plaintiff is estopped from asserting that the mortgage is anything more than a chattel mortgage,—that the name, general form, and contents of the instrument are those of a chattel mortgage; that its appearance, in every respect, is such as would lead any person to believe it to be a chattel mortgage, and that plaintiff, having held the instrument out to be such,—under the familiar rules of estoppel,—will now be estopped to assert that the mortgage is anything but what he held it out to be; *viz.,* a chattel mortgage.

Appellants' counsel also earnestly assert that the form of the instrument is such that it is a mere trap whereby innocent persons may be led into giving mortgages on their lands while believing that they are only signing chattel mortgages, and that for that reason the contract is unlawful and contrary to public morals, and is void as against public policy, under the provisions of § 5922, Compiled Laws. In view of what has already been said in this opinion, we find it unnecessary to pass upon the propositions thus advanced. It is clear to us that the instrument in question, when construed, as a whole, in accordance with the principles laid down in the Civil Code of this state for the construction of contracts is only a chattel mortgage, and that the parties intended to contract only concerning personal property. But, it also is self-evident that if the mortgage involved herein should be sustained as a mortgage on realty, that it would, as appellant's counsel assert, put a premium upon fraud and deceit, and enable unscrupulous persons to obtain real estate mortgages under the pretext that they were taking chattel mortgages only. The persons who are compelled to give chattel mortgages in order to obtain credit would in a great number of cases prove easy victims in the hands of unscrupulous creditors, if this instrument were sustained as a mortgage on realty. The fact that no charge of fraud or deceit is involved in this case does not alter the result which would naturally follow a decision sustaining the instrument under consideration as a real estate mortgage. The mortgage in question is either a mortgage on the realty or it is not. Its contractual effect would be the same whether the mortgagee was honest or dishonest. The same rules of law apply to all. There is no hardship in requiring that a person

obtaining a real estate mortgage be required to use a form which will inform the party executing the same that he is mortgaging realty. We are satisfied that the instrument in question is only a chattel mortgage, and did not mortgage the realty, and that therefore the judgment of the trial court is erroneous. The District Court will therefore reverse its judgment, and enter judgment in favor of the appellants, as prayed for in their answer.

Mr. Justice BURKE did not participate in the above, Honorable CHAS. A. POLLOCK, Judge of the District Court of the Third Judicial District, sitting in his stead.