**PAMIDA, INC., a Delaware Corporation; and South Park Associates, a Pennsylvania Limited Partnership, Plaintiffs and Appellants**

v.

**Jerry L. MEIDE, Defendant and Appellee.**

Civ. No. 940210.

Supreme Court of North Dakota.

Jan. 19, 1995.

John Bullis (argued) of Lies, Bullis, Grosz & Lindberg, Wahpeton, for plaintiffs and appellants. Appearance by Tracy Lindberg.

Fred Strege (argued) of Smith & Strege, Wahpeton, for defendant and appellee.

LEVINE, Justice.

Pamida, Inc., and South Park Associates appeal from a judgment awarding them damages of $14,246.98 from Jerry L. Meide, and from an order denying their motion to amend the judgment. We affirm in part, reverse in part, and remand for further proceedings.

In 1986, South Park Associates owned a tract of land in Wahpeton. Part of the tract was occupied by a store building leased to Pamida, Inc.[1] Intending to develop a strip mall extending along the north side of the

---

1. Hereinafter, we will refer to South Park Associates and Pamida, Inc., as South Park.

Pamida store and ending along a nearby Econofoods store, Meide purchased two parcels of land from South Park. One parcel extended along the north and east sides of the Pamida store. The other parcel was southwest of the Pamida store and was to become part of what was designated as "12th Street" in an exhibit, Exhibit D, attached to and referred to in the parties' purchase agreement.

The purchase agreement says:

"20. *CONDITIONS.* The parties' agreement herein is subject to the following conditions:

"a. In the event a street vacation Petition, a copy of which all parties acknowledge is in their possession, is not approved by the City Council for the City of Wahpeton, North Dakota, involving a part of Industrial Avenue, all of Third Avenue South, and all of Twelfth Street, this Agreement shall be null and void.

"b. All parties signing this Agreement, including the Tenant, Pamida, Inc., agree to the general development of the Southwood Center as is generally laid out on Exhibit D.

\*     \*     \*     \*     \*     \*

"*24. TWELFTH STREET ASSESS-MENTS.* When Twelfth Street is developed, Purchaser shall hold Seller and Tenant harmless from any special assessments or other costs connected with the construction of Twelfth Street, and any assessments that are assessed to the Seller or the Tenant shall be paid by the Purchaser. Seller and Tenant agree to cooperate with Purchaser to ensure that an unreasonable assessment is not attributed to the Seller's property."

Southwood Center, as shown on Exhibit D [2] referred to in Paragraph 20(b) of the purchase agreement, is an area of land bordered on the north by a railroad track and right of way between Southwood Center and North Dakota Highway 13 (Dakota Avenue), on the east by North Dakota Highway 127 (11th Street South), on the south by Old Highway 13 (4th Avenue South), and on the west primarily by what the parties denominated as "12th Street," the north end of which was to end in a strip mall parking area. The "12th Street" depicted in Exhibit D did not yet physically exist, and when it was built in 1989, it came to be denominated by the City of Wahpeton as 13th Street. The City of Wahpeton had a 12th Street north of Highway 13. At the center of the Southwood Center area are the Pamida store and the Econofoods store, which were proposed to be connected with a strip mall. The street vacation petition referred to in Paragraph 20(a) of the purchase agreement and necessary for development of the proposed mall called for the vacation of Industrial Avenue within Southwood Center as it extended along the north side of the Pamida store, 3rd Avenue South running east and west on the north side of the Econofoods store, and 12th Street running north and south north of the Econofoods store.

The contemplated street vacation was completed, but the proposed strip mall was never built. A medical clinic was developed north of the Econofoods store. A Comfort Inn motel was built northwest of the Pamida store. In 1989, Wahpeton created "Street Improvement District 2–3–89 (Southwood Center)." [3] This involved constructing 12th Street from the intersection of 12th Street and North Dakota Highway 13 across the railroad right of way and railroad track to the north edge of the previously-contemplated Southwood Center project, constructing a storm sewer and 1st Avenue South parallel to the railroad track west to the new Comfort Inn site, construction of 13th Street along the

---

2. Exhibit D, which was attached to and referred to in the parties' purchase agreement, was a drawing of the proposed Southwood Center strip mall project.

3. The street construction performed under District 2–3–89 is shown in the Appendix, which does not represent any exhibit, but was added by this court to assist the reader in understanding the issue presented. The area depicted in Exhibit D as 12th Street is indicated by dots between point *a* at Old Highway 13 and point *b* on the north side of Industrial Avenue. The additional street construction (*b c d e*) performed under District 2–3–89 is indicated by dashes between point *b* at the north side of Industrial Avenue and point *e* at N.D. Highway 13.

east side of the Comfort Inn site south to the intersection with Industrial Avenue, and construction of 13th Street from the intersection with Industrial Avenue south to Old Highway 13. Wahpeton also installed sanitary sewer and water lines along 13th Street to Old Highway 13.

South Park's property in the street improvement area was assessed $51,340.67 in special assessments as a result of the street improvement project, including the sewer and water lines. When Meide failed to pay the special assessments, South Park sued Meide for the amount of the special assessments. South Park moved for summary judgment, alleging that Meide was obligated to pay for all special assessments incurred under Street Improvement District 2-3-89. The court determined that Meide was required to pay special assessments only for street construction of 13th Street between Old Highway 13 and Industrial Avenue (12th Street on Exhibit D). The court determined that Meide was not responsible for any special assessments for the rest of the street construction done under Street Improvement District 2-3-89, or any special assessments for water and sewer installation. Judgment was entered in favor of South Park for $14,246.98.

South Park appealed, contending that Paragraph 24 of the parties' purchase agreement requires Meide to pay all special assessments incurred in the construction of 12th Street between Old Highway 13 at the south edge of the Southwood Center site and the point where 12th Street meets North Dakota Highway 13 (Dakota Avenue) north of the railroad right of way along the north edge of the Southwood Center site. South Park contends that Meide is also required by Paragraph 24 to pay the special assessments imposed for the installation of sewer and water lines "connected with the construction of Twelfth Street." [4]

■ The construction of a written contract to determine its legal effect is a question of law. *Red River Human Services*

*Found. v. Department of Human Services*, 477 N.W.2d 225 (N.D.1991); *Production Credit Ass'n v. Foss*, 391 N.W.2d 622 (N.D. 1986); *Sorlie v. Ness*, 323 N.W.2d 841 (N.D. 1982). A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting. Section 9-07-03, N.D.C.C. Under § 9-07-04, N.D.C.C., the intention of the parties to a written contract is to be ascertained from the writing alone, if possible. If executed documents are unambiguous, parol evidence is not admissible to contradict the terms of the written agreement. *Production Credit Ass'n v. Foss*, *supra*. If a written contract is ambiguous, extrinsic evidence can be considered to clarify the parties' intent. *First Nat'l Bank & Trust Co. v. Scherr*, 435 N.W.2d 704 (N.D. 1989). "[W]here the contract is clear and unambiguous there is no reason to go further." *Hoge v. Burleigh County Water Management Dist.*, 311 N.W.2d 23, 27 (N.D. 1981). Whether or not a contract is ambiguous is a question of law. *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485 (N.D. 1987); *First Nat'l Bank & Trust Co. v. Scherr*, *supra*. "An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question." *Vanderhoof v. Gravel Products, Inc.*, *supra*, 404 N.W.2d at 491. If the parties' intentions can be ascertained from the writing alone, then the interpretation of the contract is entirely a question of law, and we will independently examine and construe the contract to determine if the district court erred in its interpretation of it. *Sorlie v. Ness*, *supra*. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Section 9-07-12, N.D.C.C. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." Section 9-07-13, N.D.C.C.

Construing Paragraph 20(b) and Paragraph 24 of the purchase agreement togeth-

---

4. In a nutshell, the trial court held that Meide was responsible for street construction assessments only between points *a* and *b* as shown on the Appendix. South Park contends that Meide is responsible for all street, water, and sewer construction assessments between points *a* and *e* (*a b c d e*) as shown on the Appendix.

er, in light of Exhibit D, which was attached to the purchase agreement and referred to in Paragraph 20(b), we conclude that the purchase agreement is unambiguous with regard to the extent of Meide's responsibility for street construction assessments, but is ambiguous with regard to assessments for other construction expenses, specifically, the installation of water and sewer lines. We conclude that Meide's responsibility under Paragraph 24 to pay "special assessments or other costs connected with the construction of Twelfth Street" extends only to the construction of 12th Street, now denominated as 13th Street, between Old Highway 13 and Industrial Avenue, as depicted in Exhibit D attached to and referred to in the purchase agreement, and does not extend to paying special assessments for installation of a storm sewer, construction of 13th Street along the east side of the Comfort Inn site, construction of 1st Avenue South parallel to the railroad tracks, or construction of 12th Street from the previously-existing intersection of 12th Street and North Dakota Highway 13 across the railroad right of way and track to the north edge of the previously contemplated Southwood Center site. With respect to the question of Meide's responsibility to pay assessments for the cost of installing water and sewer lines on 12th Street, now denominated as 13th Street, between Old Highway 13 and Industrial Avenue, we conclude that the phrase "any special assessments" in Paragraph 24 of the purchase agreement is ambiguous.

■ The purpose of Paragraph 20(b) of the purchase agreement and its reference to Exhibit D was to show what development the parties were contemplating. Exhibit D clearly depicts what the parties meant by "Twelfth Street" in Paragraph 24. The evident purpose of Paragraph 24 was to place on Meide, rather than South Park, the expense of constructing a street benefiting Meide's property. At the time they contracted, the parties clearly contemplated that the "Twelfth Street" referred to in Paragraph 24 was, as depicted in Exhibit D, a street to be constructed between Old Highway 13 (4th Avenue South) on the south edge of the project site and Industrial Avenue. The parties did not contemplate, and the contract

therefore did not extend to, any other street construction.

Reasonable people could not disagree that 12th Street was limited by the parties to the stretch between Old Highway 13 and Industrial Avenue, and nothing more. To conclude, as South Park urges, that Paragraph 24 imposes upon Meide a duty to pay assessments for over twice as many feet of street construction than depicted in Exhibit D would require an unreasonable interpretation of the contract.

Meide's post-contract abandonment of the proposed strip mall did not create a latent ambiguity as to what the parties meant by 12th Street. Quoting Stroud's Judicial Dictionary, this court defined "latent ambiguity" in *Harney v. Wirtz*, 30 N.D. 292, 306, 152 N.W. 803, 808 (1915):

> " 'Second, where no ambiguity is apparent to a person perusing the deed until, on obtaining evidence of the circumstances of the parties, it is discovered that there are several persons or things, or classes of persons or things to each of which a name or description contained in the deed seems to be equally applicable. An ambiguity of this class is called a "latent ambiguity," or an "equivocation." ' "

Meide's abandonment of the strip mall project did not create a situation in which "there are several persons or things ... to each of which a name or description contained in the deed seems to be equally applicable." It cannot fairly be said that Meide's abandonment of the strip mall project has created a situation in which the 12th Street indicated in Exhibit D (*a b* on the Appendix) "seems to be equally applicable" to the much longer street actually constructed (*a b c d e* on the Appendix).

Although not necessary to our analysis, our conclusion is also supported by South Park's admissions that, at the time they executed the purchase agreement, (1) "the only development of 12th Street that was discussed by the parties was set forth in [the purchase agreement]," (2) "there was no discussion or agreement between the parties that the development of 12th Street would proceed north across the railroad right of way," and (3) "Plaintiffs possessed no draw-

ing, letter, diagram or any other document which illustrated 12th Street crossing the railroad right of way."

A storm sewer was installed to provide drainage for the 1st Avenue portion of the construction project and the Dakota Clinic property. It was not deemed to benefit the properties of South Park and they were not assessed for the cost of the storm sewer.

A parcel of South Park's property was assessed $3,406.85 for a water line and sanitary sewer installed from Industrial Avenue to the edge of the city at Old Highway 13. With regard to the sanitary sewer, Jerry Lein, Public Works Director for the City of Wahpeton, stated in a deposition:

"Sanitary sewer was extended from Industrial Avenue down to Old Highway 13 which would allow the City to extend or expand the sewer availability to any property should it be annexed at a later date, should the area be annexed. The south end of this right now is at the City limits and should there be any future development we have decided it would be a good idea ... to put the sewer in down to Old Highway 13 so it could—we wouldn't have to disturb the street construction later."

As to the water line, Lein stated:

"That's basically the same discussion as the sewer, because they go together but that also was extended from Industrial Avenue down to Old Highway 13 and the City has an agreement with Richland Rural Water System who also has a water line in that particular area that should it ever be annexed then we could hook on to that line that they have installed so this will facilitate that hook-up should it ever be necessary."

Lein stated that the sewer and water did benefit South Park's property because "that property should it ever require sewer and water would have a direct access to the sewer and water that was installed." Lein said that the "water and sewer installation had nothing to do and was not an intregal [sic] part of the street paving portion of this project."

▮▮▮ South Park contends that Meide is required by Paragraph 24 of the purchase agreement to pay the water and sewer assessment because Meide is required to pay "any special assessments or other costs connected with the construction of Twelfth Street." The trial court held that Meide was not responsible for the assessment for the water and sewer lines because "the water and sewer installation had nothing to do with the integral part of the street paving project." We believe that reasonable people could make rational arguments in support of contrary positions as to whether or not the words "any special assessments or other costs connected with the construction of Twelfth Street" in Paragraph 24 covers assessments for water and sewer lines installed at the time the street was constructed. Paragraph 24 is, therefore, ambiguous with respect to water and sewer assessments, and presents a genuine issue of material fact precluding summary judgment. We must, then, remand the matter for further proceedings to determine the parties' ambiguously expressed intentions with regard to water and sewer assessments.

The power to assess for improving or constructing a street does not ordinarily authorize an assessment for sewer and water lines located in the street. 14 Eugene McQuillin, *Municipal Corporations* § 38.24 (Rev. 3rd ed. 1987). The purpose of Paragraph 24 was to place on Meide the expense of constructing a street benefiting his property. The City installed the water and sewer lines between Industrial Avenue and Old Highway 13 primarily to benefit the City, although South Park's property was benefited also. None of Meide's property or any that he sold to the owners of the Dakota Clinic site or the Comfort Inn site were benefited by the water and sewer installation at issue. At the time of contracting, the parties could not reasonably have contemplated requiring Meide to pay for water and sewer installation that could only benefit South Park and not Meide, under the guise that assessments for water and sewer were "connected with the construction of Twelfth Street." Thus, a reasonable person could rationally argue that Paragraph 24 imposes upon Meide no responsibility to pay sewer and water assessments.

On the other hand, the parties' use of the word "any" in Paragraph 24 suggests an intention to require Meide to pay assessments for the installation of water and sewer lines at the time the street was constructed. The word "any" is expansive, not restrictive. *See, e.g.,* Webster's Third New International Dictionary, p. 97 (1971), defining "any":

"¹ *any* ... *1:* one indifferently out of more than two: one or some indiscriminately of whatever kind ... *c:* one or some of whatever kind or sort; ... *2:* one, some, or all indiscriminately of whatever quantity: ... *3a:* great, unmeasured, or unlimited in amount, quantity, number, time, or extent...."

Thus, a reasonable person could rationally argue that assessments for water and sewer installation done when the street was constructed falls within the ambit of the phrase "any special assessments or other costs connected with the construction" of the street.

Because reasonable people could make rational arguments in support of contrary positions on whether or not Paragraph 24 imposed on Meide a responsibility to pay assessments for the installation of water and sewer lines on 12th Street between Old Highway 13 and Industrial Avenue, there was a genuine issue of material fact rendering summary judgment on this issue inappropriate.

The judgment is affirmed insofar as it awards South Park $14,246.98 for assessments for street construction between Old Highway 13 and Industrial Avenue and awards nothing for other street construction on storm sewer assessments. The judgment is reversed insofar as it awards South Park nothing for water and sewer assessments, and that matter is remanded for further proceedings to determine the parties' ambiguously expressed intentions with regard to the $3,406.58 assessment for water and sewer lines.

VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

APPENDIX

---

MESCHKE, Justice, dissenting.

I agree with the majority that "any" is an "expansive" adjective that in this context means "unmeasured, or unlimited in amount, quantity, number, time, or extent." In my opinion, the majority doesn't recognize this ordinary sense of that word soon enough in its analysis. "The words of a contract are to be understood in their ordinary and popular sense...." NDCC 9–07–09. I believe this ordinary meaning controls the unambiguous meaning of Paragraph 24. For that reason, I disagree with the majority's analysis, and dissent.

NDCC 9–07–03 says: "For the purpose of ascertaining the intention of the parties to a contract, *if otherwise doubtful,* the rules given in this chapter are to be applied." (My emphasis). We should not invoke other interpretive rules unless Paragraph 24 is am-

biguous. Because I believe "the intention of the parties [can] be ascertained from the writing alone," NDCC 9–07–04, we should not be examining "circumstances" or "things covered" under NDCC 9–07–12 and 9–07–13 to clarify an ambiguity that doesn't exist. "[S]pecial assessments connected with the construction of Twelfth Street" plainly means Special Assessment Project No. 2–3–89 promoted for Meide's development.

Here, Meide agreed to indemnify South Park for "*any* special assessments . . . connected with the construction of Twelfth Street." (My emphasis). Aside from the irrelevant ambiguity in renaming part of Twelfth Street as Thirteenth Street, which all agree is immaterial, there is no ambiguity. In this context, "any" means all assessments that benefit the Seller and Tenant, "unlimited in amount, quantity, number, time, or extent."

A single street improvement project took place. The Director of Public Works for the City of Wahpeton swore:

> Project No. 2–3–89 for the City of Wahpeton completed street paving, sewer and water, and the extension of Twelfth Street over the Red River and Western Railroad. The spread sheet designating the assessments made to real property owned by South Park Associates, a Pennsylvania Limited Partnership for improvements made under Project No. 2–3–89, is attached hereto as *Exhibit "A"*.

No separate special assessment districts were created. Under NDCC 40–23–07, for example, a special assessment commission "shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as shall be necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment. . . ." Meide agreed to pay "any special assessments or other costs connected with the construction of Twelfth Street. . . ." against South Park's property.

Thus, in my view, Paragraph 24 is unambiguous. There are no cross-references between Paragraph 20 and Paragraph 24 of this contract. The street-vacation condition in Paragraph 20(a) is entirely different from the street construction contemplated in Paragraph 24. The general development contemplated in Paragraph 20(b) did not take place as planned, but a different development by Meide did. Nor did 20(b) on "development" describe "construction of Twelfth Street," the separate and specific subject of the indemnity agreement in Paragraph 24. No exhibit was referenced in Paragraph 24. We should not write terms into a clear part of an agreement that the contracting parties didn't put there.

I also disagree with the majority's conclusion that "[t]he evident purpose of Paragraph 24 was to place on Meide, . . . the expense of constructing a street benefiting *Meide's* property." (My emphasis). Benefit to Meide is immaterial. The purpose was exactly the opposite; without regard to benefiting Meide, he was to save South Park harmless from its assessed share of "any" municipal improvement "connected with" Meide's "development." This was a consideration for the sale to Meide of the sold parcel, additional to the cash price of $50,403.16. I see no limitation in Paragraph 24, which means Meide took the risk of "any" improvements that benefited South Park's remaining property "connected with the construction of Twelfth Street." Physically, all of the improvements to Twelfth Street "connected with" the part grudgingly conceded by Meide.

Paragraph 24 does not say pay for "that part of Twelfth Street marked on Exhibit D," or "the part between (a) and (b)." In my opinion, the majority opinion, like the trial court, wrongly concludes the contract is ambiguous, and then rewrites it. The language in Paragraph 24 is unlimited, but the majority's interpretation narrows and constricts it to what someone else "would have" intended if they had made the deal.

I would reverse and direct entry of judgment for South Park against Meide for the entire $51,340.67 in special assessments "connected with the construction of Twelfth Street" for the singular special assessment project, no matter the extent, the nature, or the number of the assessments thereby "connected." Therefore, I respectfully dissent.