Edward J. KRANK, Belle L. Krank,
Dennis Moore and Carole Moore,
Plaintiffs and Appellants,

v.

A.O. SMITH HARVESTORE PROD-
UCTS, INC., a Delaware
Corporation, Defendant,

AgriStor Credit Corporation, a Delaware
Corporation; AgriStor Leasing, a Wis-
consin Partnership; AgriStor Financial
Corporation, a Delaware Corporation,
Defendants and Appellees,

and

North Dakota Harvestore Systems, Inc.,
formerly Montana Dakota Harvestore,
Inc., and A.O. Smith Corporation, a
New York Corporation, Defendants.

Civ. No. 890187.

Supreme Court of North Dakota.

May 15, 1990.

Joseph A. Vogel, Jr. (argued), Vogel Law Firm, Mandan, and Wheeler Wolf, Bismarck, for plaintiffs and appellants.

Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for defendants and appellees; argued by Wickham Corwin.

GIERKE, Justice.

Plaintiffs Edward J. Krank, Belle L. Krank, Dennis Moore, and Carole Moore appeal from a summary judgment dismissing defendants AgriStor Leasing, AgriStor Credit Corporation, and AgriStor Financial Corporation from their action for damages arising from the plaintiffs' use of two Harvestore Automated Feeding Systems in their dairy operation. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiffs are dairy farmers who, in June 1979 and June 1980, signed order forms agreeing to acquire Harvestore systems from North Dakota Harvestore Systems, Inc. [North Dakota Harvestore]. A Harvestore consists of a silo and an automated system for the storage and processing of livestock feed. The systems are manufactured by A.O. Smith Harvestore Products, Inc. [Harvestore Products]. North Dakota Harvestore obtained and installed all materials and equipment necessary to erect the systems.

To finance the Harvestore systems, the plaintiffs entered into eight-year lease agreements with AgriStor Leasing, a partnership engaged primarily in the business of leasing Harvestore systems. Upon acceptance of the plaintiffs' applications for financing, AgriStor Leasing purchased the Harvestore systems from North Dakota Harvestore and leased them to the plaintiffs.

The plaintiffs allege that the Harvestore systems caused feed stored within them to spoil, thereby causing health problems in their dairy herd and a loss of milk production.

The plaintiffs brought this action in May 1985 seeking to recover damages under various legal theories, including fraud and breach of express and implied warranties. In addition to Harvestore Products, North Dakota Harvestore, and AgriStor Leasing, the plaintiffs named as defendants A.O. Smith Corporation [A.O. Smith]; AgriStor Credit Corporation [AgriStor Credit]; and AgriStor Financial Corporation [AgriStor Financial]. A.O. Smith is the parent corporation of Harvestore Products and AgriStor Credit. AgriStor Credit is one of the general partners in AgriStor Leasing and is engaged in the business of financing

Harvestore systems. AgriStor Financial is a wholly-owned subsidiary of AgriStor Credit and is also engaged in the business of financing Harvestore systems. The answer filed on behalf of AgriStor Leasing, AgriStor Credit, and AgriStor Financial included two counterclaims by AgriStor Leasing alleging default by the plaintiffs in making payments under the lease agreements. AgriStor Leasing requested a return of the Harvestore systems and deficiency damages.

▮▮▮▮ The defendants moved for summary judgment. The trial court granted summary judgment dismissing AgriStor Leasing, AgriStor Credit, and AgriStor Financial from the action. The trial court also granted partial summary judgment to the other defendants, but denied their motions on the plaintiffs' breach of warranty and fraud claims. The plaintiffs stipulated to entry of judgment awarding AgriStor Leasing deficiency damages in the amount of $84,229.81 and immediate possession of the Harvestore systems. The trial court found no just reason for delay and entered a Rule 54(b), N.D.R.Civ.P., order certifying as final the judgment dismissing AgriStor Leasing, AgriStor Credit, and AgriStor Financial from the action.[1] The plaintiffs have appealed.

Summary judgment is a procedural device available for the prompt and expedi-

1. Initially, the trial court's grant of summary judgment to AgriStor Leasing, AgriStor Credit, and AgriStor Financial left AgriStor Leasing's counterclaim against the plaintiffs unadjudicated. The plaintiffs and AgriStor Leasing thereafter entered into a stipulation stating in part that "[p]laintiffs are willing to voluntarily surrender possession of the equipment covered by the counterclaims and do not dispute the amount of the remaining deficiency damages AgriStor Leasing is entitled to recover as a consequence of plaintiffs' default under the terms of the respective agreements."

AgriStor Leasing then moved for entry of judgment incorporating the terms of the parties' stipulation concerning the counterclaim and for a Rule 54(b), N.D.R.Civ.P., certification that there was no just reason for delaying entry of final judgment as to all claims and causes of action involving the AgriStor defendants. Pursuant to the stipulation, the judgment awarded AgriStor Leasing $84,229.81 in damages, the right to recover immediate possession of the two Harvestore systems, and spelled out the procedure for recovering the systems. The judgment further provided that "[s]ince the damage award ordered above has been computed in a manner that accounts for the assumed net mitigation, if any, which will be recovered through the release or resale of this equipment, AgriStor Leasing shall be hereafter free to dispose of the equipment in any manner, without the necessity for providing any further notice to plaintiffs and without any need to account for or otherwise credit all, or any portion of, the proceeds from such disposition." The judgment also directed the Morton County Sheriff, or his designated deputy or other representative, "to assist AgriStor Leasing in obtaining the immediate possession and delivery" of the Harvestore systems if the plaintiffs "fail for any reason to permit the agreed removal of the equipment in the manner outlined above." The trial court granted the Rule 54(b) certification, determining that "there is no just reason for delay and

that a final judgment should now be entered as to all claims or causes of action involving AgriStor."

We will *sua sponte* review a Rule 54(b) certification to determine whether the trial court has abused its discretion. *Union State Bank v. Woell,* 357 N.W.2d 234, 236 (N.D.1984). In determining whether to issue a Rule 54(b) certification, the trial court is required to weigh juridical concerns and the strong policy against piecemeal appeals with any relevant equitable factors demonstrating unusual prejudice or hardship that may be present in the case. *Janavaras v. Nat'l Farmers Union Property,* 449 N.W.2d 578, 582 (N.D.1989). There are juridical concerns which militate against certification in this case. For example, because the plaintiffs' claims against the AgriStor defendants are based solely upon principles of derivative liability, there is a possibility that the "need for review might be mooted by future developments in the trial court...." *Peterson v. Zerr,* 443 N.W.2d 293, 298 (N.D.1989).

However, the trial court was also presented with countervailing equitable factors. The plaintiffs did not dispute the amount of deficiency damages they owed to AgriStor Leasing as a result of their default under the terms of the lease agreements and agreed to allow AgriStor Leasing immediate possession of the Harvestore systems. The value of the systems and the amount of the damage award are substantial. AgriStor Leasing's obvious purpose in seeking the certification was to obtain a final judgment subject to appellate review so that it could be paid promptly on an undisputed claim for damages and could exercise its undisputed right to regain possession of the Harvestore systems without awaiting the final outcome of this potentially lengthy litigation. *See Bank of Lincolnwood v. Federal Leasing, Inc.,* 622 F.2d 944 (7th Cir.1980). Under these circumstances, we cannot say that the trial court abused its discretion in granting the Rule 54(b) certification.

tious disposition of controversies without trial when, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Production Credit Ass'n of Fargo v. Ista,* 451 N.W.2d 118, 120 (N.D.1990). Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings but must present competent evidence by affidavit or other comparable means which raises an issue of material fact. *Eckmann v. Northwestern Federal Savings & Loan Association,* 436 N.W.2d 258, 260 (N.D.1989). Although factual disputes exist, summary judgment is nevertheless appropriate when resolution of the factual disputes would not change the result. *Russell v. Bank of Kirkwood Plaza,* 386 N.W.2d 892, 897 (N.D.1986).

Although the plaintiffs refer to AgriStor Leasing, AgriStor Credit, and AgriStor Financial collectively as "AgriStor" in their appellate brief, they have not advanced any arguments explaining why the trial court's dismissal from the lawsuit of AgriStor Credit and AgriStor Financial, as opposed to AgriStor Leasing, was improper. AgriStor Credit and AgriStor Financial contend that "[a]t no time have plaintiffs entered into any agreements or otherwise been in privity with" them. We are "not obligated to search the record for evidence opposing a motion for summary judgment." *Union State Bank v. Woell,* 434 N.W.2d 712, 721 (N.D.1989). Therefore, we affirm that part of the summary judgment dismissing AgriStor Credit and AgriStor Financial from the action.

The plaintiffs do not assert that AgriStor Leasing can be directly liable to them under their theories of recovery. Rather, they assert that AgriStor Leasing is derivatively liable under principles of agency and the "close connectedness" doctrine.

■ An agency "is actual when the agent really is employed by the principal. It is ostensible when the principal intention-ally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." Section 3–01–03, N.D.C.C. An ostensible agency exists where the conduct of the supposed agent is consistent with an agency, and where, in a particular transaction, someone is justified in dealing with the supposed agent. *Fleck v. Jacques Seed Co.,* 445 N.W.2d 649, 651 (N.D.1989). An apparent or ostensible agency "must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal." *Johnson v. Production Credit Ass'n of Fargo,* 345 N.W.2d 371, 375 (N.D.1984). Unless the evidence is such that reasonable persons can draw but one conclusion, the existence of an agency relationship is a question of fact. *First State Bank of Buxton v. Thykeson,* 361 N.W.2d 613, 616 (N.D.1985).

■ In response to the motion for summary judgment, the plaintiffs submitted affidavits stating that during the summer of 1979, they were approached by Tom Prischmann of North Dakota Harvestore who told them that a Harvestore system was "an oxygen limiting system;" that "it would store our feed better;" that "we would experience less field loss and storage loss through the use of the system;" that "we could harvest grain at its peak condition;" that "we would utilize less grain since it was a high moisture storage system and would allow us to feed longer with the same amount of grain than previously;" and that "we would increase our milk production by enough to pay for the system."

The plaintiffs asserted that after leasing the first structure from AgriStor Leasing in June 1979, they experienced mechanical problems with it and noticed an immediate drop in milk production. They contacted Harvestore Products and North Dakota Harvestore, who arranged a tour for them of other dairy farms that use the Harvestore system. Prischmann told them that "by incorporating a high moisture grain unit with a haylage unit we could offer our cattle a complete feeding system," and that

"it certainly would boost our production." Prischmann also gave the plaintiffs a "farm profit plan" demonstrating that, by using two Harvestore systems, "they would pay for themselves." The plaintiffs entered into a second lease agreement with AgriStor Leasing for another Harvestore system.

Problems continued to plague the plaintiffs' dairy operation. Between 1979 and 1984, fifteen of the plaintiffs' cows died and "countless others" became sick and "had numerous reproductive problems." The plaintiffs also had to "cull cows that would normally not be taken out of production." A veterinarian advised the plaintiffs to not give the sick cows feed from the Harvestore systems, but North Dakota Harvestore representatives maintained that the veterinarian was wrong and that "there was nothing the matter with Harvestore feed."

In September 1984, the plaintiffs attended a meeting with other dairy farmers and were told that "Harvestore silos were not oxygen limiting and never could be." According to the plaintiffs, they hired their own experts and discovered that "this was true, and worse yet, the A.O. Smith family of corporations knew of this since the 1950's, but continued to build up a nationwide organization to sell this product by deception and misrepresentation."

The plaintiffs asserted that, during discussions prior to acquiring the Harvestore systems, they "were not informed of other financing options available to us in more than a cursory manner" and they "were led to believe that there would be fewer problems for us if we would finance through AgriStor, since it was one of the family" and "part of the Harvestore Team." The plaintiffs alleged that they "were told we were dealing with one entity during the entire transaction, in other words, to deal with North Dakota Harvestore was to deal with AgriStor."

The plaintiffs also presented an affidavit of Jim Haaland, a former sales representative for North Dakota Harvestore, who explained the sales and financing techniques used by North Dakota Harvestore in conjunction with AgriStor Leasing to sell and finance Harvestore products, equipment, and systems. Haaland stated that sales representatives were trained that "the Harvestore silos were oxygen limiting and preserved the quality of feed as if harvested in the field," and that they "were told that if owners of Harvestore systems complained about lack of production ... this was not a problem with the Harvestore system...." Haaland said that sales representatives were given a "Credit Training manual" which explained the features "of AgriStor as providing exclusive financing for the Harvestore System," and "was used to promote AgriStor leasing and/or purchasing programs and to convince farmers to take advantage of these programs." According to Haaland, AgriStor representatives attended local sales meetings twice a year and presented "information on lease interest rates and various credit schemes, teaching us how to figure out the lease formulas." Sales representatives would give potential customers "literature for AgriStor Leasing" which they received from North Dakota Harvestore. Haaland said that AgriStor "played an integral part in the sales of the Harvestore systems because local banks would not finance" the systems.

Haaland also stated that AgriStor employees "would talk about the system. They knew how it worked, and would answer our questions on how to sell it through farm profit plans and financing arrangements." Haaland said that "AgriStor people would go out in the field with us to assist in the sale," and that "[a]s sales representatives, we were taught to emphasize the positives of the Harvestore system, and the AgriStor people would assist us in doing this and in helping sell based on the farm profit plans and the credit arrangements they would make." Haaland also stated that "[a]s a sales representative for [North Dakota Harvestore] there was no doubt in my mind that I was also a representative for AgriStor...."

Viewing this evidence in the light most favorable to the plaintiffs and giving them the benefit of all favorable inferences, we

believe a genuine issue of fact exists whether North Dakota Harvestore and its representatives acted as an agent of Agri-Stor Leasing, not only with regard to the financing aspects of the transactions, but with regard to the alleged misrepresentations as to the performance, quality, and profitability of the Harvestore system.

The cases relied upon by AgriStor Leasing, rejecting, as a matter of law, liability premised on agency principles are distinguishable from this case. The records in *Wight v. AgriStor Leasing*, 652 F.Supp. 1000, 1010–1011 (D.Kan.1987); *AgriStor Leasing v. Meuli*, 634 F.Supp. 1208, 1215 (D.Kan.1986); *AgriStor Credit Corp. v. Schmidlin*, 601 F.Supp. 1307, 1313 (D.Ore. 1985); and *AgriStor Leasing v. Kjergaard*, 582 F.Supp. 39, 41–42 (D.Minn.1983), did not contain evidence comparable to the plaintiffs' assertion that they were told they were "dealing with one entity during the entire transaction," and Haaland's affidavit indicating AgriStor Leasing's substantial involvement in orchestrating sales of the systems.

■ AgriStor Leasing asserts that the following language of the lease agreements justified the trial court's granting of summary judgment on the agency question:

"LESSEE ACKNOWLEDGES AND AGREES THAT NEITHER THE SUPPLIER NOR ANY SALESMAN, EMPLOYEE, REPRESENTATIVE OR AGENT OF THE SUPPLIER IS AN AGENT OR REPRESENTATIVE OF LESSOR, AND THAT NONE OF THE ABOVE ARE AUTHORIZED TO WAIVE OR ALTER ANY TERM, PROVISION OR CONDITION OF THIS LEASE, OR MAKE ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THIS LEASE OR THE EQUIPMENT. LESSEE FURTHER ACKNOWLEDGES AND AGREES THAT LESSEE, IN EXECUTING THIS LEASE, HAS RELIED SOLELY UPON THE TERMS, PROVISIONS AND CONDITIONS CONTAINED HEREIN, AND ANY OTHER STATEMENTS, WARRANTIES OR REPRESENTATIONS, IF ANY, BY THE SUPPLIER, OR ANY SALESMAN, EMPLOYEE, REPRESENTATIVE OR AGENT OF THE SUPPLIER, HAVE NOT BEEN RELIED UPON, AND SHALL NOT IN ANY WAY AFFECT LESSEE'S OBLIGATION TO PAY THE RENT AND OTHERWISE PERFORM AS SET FORTH IN THIS LEASE. IF EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER, OR IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE ANY CLAIM ON ACCOUNT THEREOF SOLELY AGAINST THE SUPPLIER."

AgriStor Leasing contends that this language estops plaintiffs from claiming North Dakota Harvestore had the actual or apparent authority to act on behalf of Agri-Stor Leasing with regard to any aspect of the transactions. We disagree.

The plaintiffs' complaint alleges that they were fraudulently induced to enter into the lease and purchase agreements and requests rescission and damages. The trial court refused to grant summary judgment against the plaintiffs on this claim. This court has held that the parol evidence rule does not apply to the immediate parties to a contract where one of the parties has alleged fraud as a defense to the validity of the contract. *Verry v. Murphy*, 163 N.W.2d 721, 730 (N.D.1968); *Schue v. Jacoby*, 162 N.W.2d 377, 382 (N.D.1968); *see also Wehner v. Schroeder*, 354 N.W.2d 674, 678 n. 2 (N.D.1984). Based on this reasoning, courts have held that when a party to a contract seeks to rescind the contract because of fraud, provisions in the contract waiving warranties or disclaiming or limiting liability are not controlling. *See, e.g., Agristor Leasing v. Farrow*, 826 F.2d 732, 736 n. 6 (8th Cir.1987) [construing Iowa law]; *Tinker v. DeMaria Porsche Audi, Inc.*, 459 So.2d 487, 491–492 (Fla.Ct. App.1984); *George Robberecht Seafood v. Maitland Bros.*, 220 Va. 109, 255 S.E.2d 682, 683–684 (1979); 3 Anderson on the Uniform Commercial Code § 2–316:15 (3d ed. 1983). The Georgia Supreme Court explained:

"[T]he question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury. It is inconsistent to apply a disclaimer provision of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud which induced the execution of the contract. If the contract is invalid because of the antecedent fraud, then the disclaimer provision therein is ineffectual since, in legal contemplation, there is no contract between the parties.... We hold, therefore, that the Uniform Commercial Code ... does not preclude an action in tort based upon fraudulent misrepresentation inducing the sale ... and that such a tort action cannot be controlled by the terms of the contract itself."

*City Dodge, Inc. v. Gardner,* 232 Ga. 766, 208 S.E.2d 794, 797–798 (1974). We conclude that the lease provision does not preclude the plaintiffs from claiming that an agency relationship existed between AgriStor Leasing and North Dakota Harvestore.

We also conclude that it is unnecessary to address the other issues raised by the parties regarding the effectiveness of the disclaimer of warranty and waiver of defense provisions of the lease agreements under the "close connectedness" doctrine

[*see Valmont Credit Corp. v. McIlravy,* 344 N.W.2d 691 (S.D.1984); § 41–09–19 (U.C.C. § 9–206), N.D.C.C.], and § 51–07–09, N.D.C.C. If the plaintiffs prevail at trial on their claim for rescission of the lease agreements based upon fraud, these issues become moot. *See* 3 Anderson on the Uniform Commercial Code, *supra,* at p. 338 ["When a buyer avoids a contract because of fraud, the entire contract is avoided so that any disclaimer of warranties made in the contract ceases to have any existence."]. Therefore, addressing these issues before resolution of the plaintiffs' claim for rescission "would be tantamount to rendering an advisory opinion." *Stamper Black Hills Gold Jewelry, Inc. v. Souther,* 414 N.W.2d 601, 606 (N.D.1987).

We affirm the summary judgment dismissal of AgriStor Credit and AgriStor Financial from the lawsuit. We reverse the summary judgment dismissing AgriStor Leasing from the action and remand for trial.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and VERNON R. PEDERSON * Surrogate Justice, concur.

* PEDERSON, Surrogate Judge, sitting in place    of LEVINE, J., disqualified.