2001 ND 17

**DES LACS VALLEY LAND CORP.,**
**Plaintiff and Appellant,**

v.

**Daniel HERZIG a/k/a Dan Herzig a/k/a Daniel E. Herzig, Violet Herzig, Karla D. Herzig, and James Herzig, Defendants and Appellees.**

No. 20000033.

Supreme Court of North Dakota.

Feb. 1, 2001.

Shane C. Goettle, McGee, Hankla, Backes & Dobrovolny, Minot, ND, for plaintiff and appellant.

Gary H. Lee, Olson Burns Lee, Minot, ND, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Des Lacs Valley Land Corporation appealed an amended judgment ordering it and Alphild Herzig to convey their interest in approximately 60 acres of land, called Outlot 1, to Violet Herzig upon her payment of $10,000, and declaring void Des Lacs' mortgage on Outlot 1 to Katz, Inc. We hold Violet Herzig was entitled to specific performance of agreements requiring Immobilien, Inc., a wholly owned subsidiary of Des Lacs, to convey Outlot 1 to her. We affirm.

I

[¶ 2] Before August 7, 1991, Violet Herzig and Karla Herzig owned the surface of Outlot 1 in Ward County as tenants in common, and Violet Herzig owned the underlying minerals. On August 7, 1991, Violet Herzig executed a quitclaim deed conveying her interest in Outlot 1 to Des Lacs. This quitclaim deed was recorded in January 1996. On September 9, 1991, Vio-let Herzig executed a second quitclaim deed conveying her interest in Outlot 1 to Des Lacs. The second quitclaim deed was not recorded, and the only difference between the deeds was that the second deed assigned Violet Herzig's interest as a contract for deed vendor to Des Lacs.

[¶ 3] On November 27, 1991, Des Lacs executed a quitclaim deed conveying its interest in Outlot 1 to Immobilien. Alphild Herzig served as president of both Des Lacs and Immobilien. This quitclaim deed was not recorded.

[¶ 4] In October 1994, in a partition action by Karla Herzig against Immobilien and Violet Herzig, counsel for Immobilien, Violet Herzig, and Karla Herzig stipulated that Violet Herzig or Immobilien, as may be determined between them, owned Outlot 1 as tenants in common with Karla Herzig. In November 1994, in the same partition action, counsel for Immobilien and Violet Herzig stipulated that Immobilien, Des Lacs, and any other entity claiming an interest in Outlot 1 would execute a quitclaim deed conveying all its right and title in the property to Violet Herzig, and she would tender $10,000 for delivery of the quitclaim deed. After the stipulations were executed, Violet Herzig tendered $10,000 to Immobilien, but it did not execute a quitclaim deed to her. In August 1995, Immobilien was involuntarily dissolved. In March 1996, Des Lacs mortgaged Outlot 1 to Katz as security for a $34,000 loan, and the mortgage was recorded in March 1996. In June 1999, Alphild Herzig, as Immobilien's past president, executed a confirmatory deed conveying Outlot 1 to Des Lacs.

[¶ 5] By complaint dated May 28, 1999, Des Lacs initiated this action to quiet title to Outlot 1. Violet Herzig answered, admitting she gave a quitclaim deed to Des Lacs in September 1991, but asserting Des Lacs conveyed its interest in the land to Immobilien, which, in turn, agreed to convey the land to her. The trial court ruled the 1991 quitclaim deeds from Violet Herzig to Des Lacs were security for a loan

and not a fee simple transfer. The court ordered Des Lacs and Alphild Herzig to convey all their interest in Outlot 1 to Violet Herzig upon her payment of $10,000 to them. The court also concluded Des Lacs' mortgage to Katz was void, because Des Lacs was not the owner of the land when the mortgage was executed.

## II

[¶ 6] Des Lacs argues the trial court erred as a matter of law in relying on parol evidence and deciding the 1991 quitclaim deeds from Violet Herzig to Des Lacs were security arrangements and not conveyances of real property.

[¶ 7] Section 9–06–07, N.D.C.C, in part, codifies the parol evidence rule, *see Gajewski v. Bratcher*, 221 N.W.2d 614, 626 (N.D.1974), and provides:

> The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

The parol evidence rule is a rule of substantive law and precludes use of evidence of prior oral negotiations and agreements to vary the terms expressed in a written contract. *Radspinner v. Charlesworth*, 369 N.W.2d 109, 112 (N.D.1985); *Bye v. Elvick*, 336 N.W.2d 106, 111 (N.D.1983); *Gajewski*, at 626.

[¶ 8] In *Gajewski*, 221 N.W.2d at 627, we concluded oral testimony was incompetent and inadmissible (1) to vary or contradict an executed and delivered quitclaim deed; (2) to prove the deed was security for repayment of a loan; and (3) to nullify the grant contained in the deed. We said:

> The parol evidence rule has been variously defined and has been best stated as follows:
>
> " ' " 'Where parties, *without any fraud or mistake*, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of

their agreement:' ... 'all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and *"unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence."* ' " ' " *Associated Hardware Supply Co. v. Big Wheel Distributing Company*, 355 F.2d 114, 119 (3d Cir.1966), 17 A.L.R.3d 998.

. . . .

> The parol evidence rule is founded on experience and public policy and created by necessity, and it is designed to give certainty to a transaction which had been reduced to writing by protecting the parties against the doubtful veracity and the uncertain memory of interested witnesses. *Hanes v. Mitchell*, [78 N.D. 341, 49 N.W.2d 606 (1951) ]; 32A C.J.S. Evidence § 851.

> We have approved and applied this rule in the interpretation of § 9–06–07, N.D.C.C., and have held:
>
> > "Where a written contract is complete in itself, is clear and unambiguous in its language and contains mutual contractual covenants agreed upon, such parts cannot be changed by parol testimony, nor new terms added thereto, in the absence of a clear showing of fraud, mistake or accident." *Larson v. Wood*, 75 N.D. 9, 25 N.W.2d 100 (1946).

*Gajewski*, 221 N.W.2d at 626 (emphasis in original).

[¶ 9] A deed is a written contract and is subject to the parol evidence rule. *Radspinner*, 369 N.W.2d at 112. Under N.D.C.C. § 9–07–04, the intention of the parties to a written contract must be ascertained from the writing alone, if possible. If a written contract is unambiguous, parol evidence is not admissible to contradict the written language. *Pamida, Inc. v. Meide*, 526 N.W.2d 487, 490 (N.D.

1995). However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent. *Id.* Whether or not a contract is ambiguous is a question of law. *Id.*

[¶ 10] Here, the trial court found it was apparent Violet Herzig and Alphild Herzig struck an agreement for Violet Herzig to deed Outlot 1 to Alphild Herzig as security for attorney fees advanced to Violet Herzig, and if she repaid the funds, the land would be returned to her. However, nothing in the written 1991 quitclaim deeds suggests the deeds were given as security for attorney fees advanced to Violet Herzig. Rather, the 1991 quitclaim deeds unambiguously conveyed Violet Herzig's interest in Outlot 1 to Des Lacs, and there is no allegation of fraud, mistake, or accident. We conclude parol evidence was not admissible to contradict the grants in those quitclaim deeds. *See Gajewski,* 221 N.W.2d at 627. To the extent the trial court relied upon parol evidence to conclude the 1991 transaction was intended as security, the court erred.

### III

[¶ 11] We have said, however, we will not set aside a trial court's decision merely because the court applied an incorrect reason, if the result is the same under the correct law and reasoning. *See, e.g., State Bank & Trust v. Brekke,* 1999 ND 212, ¶ 8, 602 N.W.2d 681.

[¶ 12] Section 32–04–04, N.D.C.C, authorizes a person with a claim to title to real property to recover a judgment requiring another to perfect the title and deliver possession of the property. Specific performance is an equitable remedy which rests in the sound discretion of a trial court, and we will not interfere with the court's exercise of that discretion absent an abuse. *Linderkamp v. Hoffman,* 1997 ND 64, ¶ 5, 562 N.W.2d 734.

[¶ 13] In the 1994 partition action, Violet Herzig and Immobilien stipulated that Immobilien "shall execute a Quit Claim Deed conveying all of its right, title and interest in and to said real property to Violet Herzig"; the "Quit Claim Deeds ... shall be held in escrow by [counsel for Immobilien] until such time as Violet Herzig tenders the sum of Ten Thousand Dollars ($10,000) to Immobilien"; "upon receipt of the Ten Thousand Dollars ($10,000), [counsel for Immobilien] shall deliver the Quit Claim Deeds to Violet Herzig"; "Immobilien, Inc. will reconvey to Violet Herzig all of its right, title and interest in and to the real property"; and "Immobilien, Inc. will not participate any further in the defense [of the partition action] since Violet Herzig is the real party in interest." In Violet Herzig's answer to this quiet title action, she asserted Des Lacs conveyed its interest in the property to Immobilien, which in turn agreed to convey the land to her. Des Lacs concedes counsel for Immobilien had authority to bind Immobilien. *See* N.D.C.C. § 27–13–02. The trial court found Violet Herzig's attempt to pay Immobilien the $10,000 was refused. The court ordered Violet Herzig to pay Des Lacs and Alphild Herzig $10,000, and upon payment, they were required to convey their interest in the land to Violet Herzig.

[¶ 14] Des Lacs argues the stipulations "do not constitute a present conveyance, but only an agreement to effect an execution and delivery which would constitute a conveyance at some future date." The court essentially ordered specific performance of the 1994 stipulations as an equitable remedy. Under these circumstances, we conclude the trial court did not err in effectively ordering specific performance of the 1994 stipulations.

### IV

[¶ 15] Des Lacs argues the trial court erred as a matter of law in declaring Des Lacs' mortgage to Katz void, because Katz was not a party to the quiet title action and the court did not have personal jurisdiction over it.

[¶ 16] The trial court concluded Des Lac's mortgage to Katz was void, because Immobilien, not Des Lacs, was the owner of the property when Des Lacs mortgaged the property to Katz. Des Lacs argues the mortgage became a lien on the property under N.D.C.C. § 35–03–01.2(4), when Des Lacs received the confirmatory deed from Immobilien on June 8, 1999. However, the confirmatory deed was issued after Des Lacs commenced this quiet title action in May 1999 and after Violet Herzig answered the complaint on June 4, 1999. The confirmatory deed was issued after Immobilien was dissolved, and Des Lacs presented no evidence to establish the 1999 confirmatory deed was issued to effectuate a prior transaction. *See Brend v. Dome Dev., Ltd.*, 418 N.W.2d 610, 613 (N.D.1988) (holding warranty deed issued by corporate officers five years after corporate dissolution was void where there was no evidence the transaction involved a confirmatory deed to effectuate a prior transaction).

[¶ 17] Moreover, although Des Lacs instituted this quiet title action, it did not name Katz as a party and Katz has not intervened in the action. The evidence at trial suggested Alphild Herzig was associated with both Des Lacs and Katz. The trial court found Alphild Herzig executed the mortgage on behalf of Des Lacs to Katz, and Katz had the same address as her. *See Quick v. Fischer*, 417 N.W.2d 843, 845 (N.D.1988) (stating plaintiff who knew about nonparty's interest in land should have joined nonparty in action to cancel contract for deed). Under these circumstances, we conclude the trial court did not err in deciding the mortgage between Des Lacs and Katz was void.

V

[¶ 18] We affirm the amended judgment.

[¶ 19] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., JAMES M. BEKKEN, D.J., concur.

[¶ 20] The Honorable BEKKEN, D.J., sitting in place of KAPSNER, J., disqualified.