2010 ND 56

**CITIZENS STATE BANK–MIDWEST, Plaintiff and Appellee**

v.

**Myron SYMINGTON, Defendant and Appellant**

and

**Rodney Lee Symington and Michael Corey Symington, as Trustees of the Myron Symington Irrevocable Trust, Defendant.**

No. 20090216.

Supreme Court of North Dakota.

April 6, 2010.

Tracy Ann Kennedy (argued) and Bradley Wayne Parrish (appeared), Grand Forks, N.D., for plaintiff and appellee.

Lawrence A. Dopson, Bismarck, N.D., for defendants and appellant.

KAPSNER, Justice.

[¶ 1]   Myron Symington appeals from a partial summary judgment requiring him to pay Citizens State Bank $213,225.94, plus interest, on a guaranty for debt of a business owned by his son, Barry Symington. We hold the district court did not abuse its discretion in certifying the partial summary judgment as final under N.D.R.Civ.P. 54(b), but we hold the court erred in granting the summary judgment. We reverse and remand.

I

[¶ 2]   Barry Symington operated a business that manufactured hardwood doors, Westwood Manufacturing, LLC, and financed operation of the business with Citizens State Bank. According to Barry Symington, he initially obtained financing for Westwood through Jon Duncan at Citizens

State Bank with a series of short-term loans that were secured by a security interest in Westwood's assets. In 2006, Duncan left Citizens State Bank and was replaced by Jeremy Hughes. Barry Symington claimed he and Hughes discussed consolidating the outstanding short-term loans, which were not then overdue, into one loan, and they also discussed a separate line of credit for Westwood's purchase of raw materials, which would be repaid when the raw materials were processed into hardwood doors and sold. Barry Symington signed a $165,040 promissory note for the consolidated short-term notes and a $50,040 promissory note for the line of credit to purchase raw materials for the business. The $165,040 note refers to a security agreement as security for that note but does not mention a guaranty. The $50,040 note refers to a security agreement and a guaranty as security for that note. Both promissory notes were dated June 2, 2006.

[¶ 3] Barry Symington claimed he and Hughes discussed additional collateral for the promissory note for the line of credit, including using Barry Symington's house as security, or having Myron Symington co-sign for the note. According to Myron Symington, he did not want his son to mortgage the house and he met with Hughes and signed a document denominated as a "commercial guaranty," which was also dated June 2, 2006, and purported to guaranty "all obligations" of Westwood. Myron Symington claimed he understood he was guaranteeing only a $20,000 advance by Citizens State Bank for one load of raw materials for Westwood and he had specific discussions to that effect with Hughes:

> I told Barry I didn't want him to mortgage his house, and that I would go talk to [Hughes]. I drove to Neche and stopped at the Citizens State Bank and told [Hughes] that I didn't want Barry

to have to mortgage his house. At that time it was my understanding that what Barry needed was $20,000 to purchase a load of lumber from the mill and that he wanted to borrow that amount from the Bank. I told [Hughes] that I would help Barry to buy the load of lumber. [Hughes] then pulled out a document, which was actually a number of pages of very small print that he had ready and said that if I signed it, it would get a load of lumber for Barry. Before I signed the paper I said, "All I am doing is to help buy a load of lumber." [Hughes] said, "Yes, that is all we are doing". [Hughes] said his father had done this same kind of thing for him. Based on that conversation, and trusting [Hughes], I signed the document I was given without carefully reading it. After I signed the paper and was leaving I recall I said, "Now, all I'm doing is helping to buy a load of lumber". [Hughes] again said, "Yes, yes, that is all we are doing".

[¶ 4] Westwood subsequently defaulted on the two promissory notes. In 2008, Citizens State Bank sued Myron Symington under the commercial guaranty for more than $200,000 in principal, plus interest, due under the two promissory notes. In a separate contingent claim under N.D.R.Civ.P. 18(b), Citizens State Bank also sued Rodney Symington and Michael Symington, as trustees of Myron Symington's irrevocable trust, alleging Myron Symington had fraudulently transferred real property to the trust to render himself insolvent and unable to pay his debts, including the debt claimed by Citizens State Bank under the guaranty. The Bank moved for partial summary judgment on the guaranty claim. Myron Symington resisted that motion and moved to amend his answer to plead lack of consideration, payment, estoppel, waiver, con-

structive and actual fraud, and mistake of law and fact.

[¶ 5] The district court granted Citizens State Bank summary judgment on the guaranty claim, concluding Myron Symington was liable to the Bank on the guaranty for $213,225.94, plus interest. The court decided the guaranty was clear and unambiguous, which precluded consideration of parol evidence as to its terms; there was consideration for the guaranty; Myron Symington's consent to the guaranty was not procured through actual or constructive fraud; Myron Symington was not entitled to rely on equitable estoppel because he did not lack the means of obtaining knowledge about the guaranty or agreement; and the Bank was entitled to late fees under the terms of the respective notes. The court said, in light of its decision, Myron Symington's motion to amend his answer "would appear moot." The court did not decide Citizens State Bank's contingent claim for a fraudulent conveyance against Rodney Symington and Michael Symington as trustees of the Myron Symington irrevocable trust, and that claim is still pending in the district court. The court certified the summary judgment on Citizens State Bank's guaranty claim against Myron Symington as final under N.D.R.Civ.P. 54(b), stayed enforcement or collection of that judgment pending appeal, and granted Myron Symington's motion to amend his answer in the event this Court reversed the summary judgment on the guaranty claim.

## II

[¶ 6] Citizens State Bank argues the district court abused its discretion in certifying the summary judgment under N.D.R.Civ.P. 54(b), because the certification could lead to piecemeal litigation and because Myron Symington failed to demonstrate unusual, exceptional, or compelling circumstances necessitating certification. Myron Symington counters the district court did not abuse its discretion in certifying the summary judgment on the guaranty claim under Rule 54(b). He argues the two claims in Citizens State Bank's complaint represent discrete and legally unrelated claims, and the claim regarding the alleged fraudulent conveyance simply seeks assistance in collecting any judgment entered under the separate claim regarding the guaranty. He asserts the two claims could be tried in separate trials and there would be prejudice and undue hardship to him without the Rule 54(b) certification.

[¶ 7] Rule 54(b), N.D.R.Civ.P., preserves this Court's long standing policy against piecemeal appeals. *Union State Bank v. Woell*, 357 N.W.2d 234, 237 (N.D. 1984). Rule 54(b) authorizes a district court to direct entry of a final judgment adjudicating fewer than all the claims, or the rights and liabilities of fewer than all of the parties, upon "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." In the absence of a Rule 54(b) certification, any order or other decision, however designated, which adjudicates fewer than all of the claims or the rights or liabilities of fewer than all of the parties does not terminate the action as to any of the claims or parties and the order or decision is subject to revision at any time before entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. *See Striegel v. Dakota Hills, Inc.*, 343 N.W.2d 785, 787 (N.D.1984) (stating absence of a proper Rule 54(b) certification precludes execution on judgment or order that does not dispose of all of the claims).

[¶ 8] We review a district court's Rule 54(b) certification under the abuse-of-discretion standard. *Brummund*

*v. Brummund,* 2008 ND 224, ¶ 5, 758 N.W.2d 735; *Choice Fin. Group v. Schellpfeffer,* 2005 ND 90, ¶ 7, 696 N.W.2d 504; *Public Service Comm'n v. Wimbledon Grain Co.,* 2003 ND 104, ¶ 7, 663 N.W.2d 186; *Hansen v. Scott,* 2002 ND 101, ¶ 8, 645 N.W.2d 223; *Symington v. Walle Mut. Ins. Co.,* 1997 ND 93, ¶ 5, 563 N.W.2d 400; *Krank v. A.O. Smith Harvestore Prods., Inc.,* 456 N.W.2d 125, 127 n. 1 (N.D.1990); *Janavaras v. National Farmers Union Prop. & Cas. Co.,* 449 N.W.2d 578, 580 (N.D.1989). A district court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law. *Brummund,* at ¶ 5; *Choice Fin. Group,* at ¶ 7; *Wimbledon Grain,* at ¶ 7.

■ [¶ 9] We have said the district court's discretion must be measured against the "interest of sound judicial administration." *Hansen,* 2002 ND 101, ¶ 9, 645 N.W.2d 223 (quoting *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). *See Woell,* 357 N.W.2d at 237 n. 4 (stating " 'infrequent harsh case' accurately reflects the stated intent of Rule 54(b) to carry out the policy against piecemeal appeals while affording litigants a remedy in the exceptional case where immediate appellate review would be in the 'interest of sound judicial administration' "). A Rule 54(b) certification should not be routinely granted and is reserved for cases involving unusual circumstances where failure to allow an immediate appeal would create a demonstrated prejudice or hardship. *Brummund,* 2008 ND 224, ¶ 6, 758 N.W.2d 735. We have described a non-inclusive list of factors for a district court to consider in assessing a request for Rule 54(b) certification:

"(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Woell,* at 238 (quoting *Allis–Chalmers Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360, 364 (3rd Cir.1975)).

[¶ 10] We have recognized that a Rule 54(b) certification may be appropriate if the certified judgment completely decides an entire claim. *Brummund,* 2008 ND 224, ¶ 9, 758 N.W.2d 735; *Choice Fin. Group,* 2005 ND 90, ¶ 9, 696 N.W.2d 504. We have also held that a district court does not abuse its discretion in granting a Rule 54(b) certification if the issues raised in the appeal will not be mooted by future developments in the district court. *Wimbledon Grain,* 2003 ND 104, ¶ 12, 663 N.W.2d 186; *Hansen,* 2002 ND 101, ¶ 15, 645 N.W.2d 223; *Symington,* 1997 ND 93, ¶ 8, 563 N.W.2d 400.

[¶ 11] In *Hansen,* we considered a Rule 54(b) certification in the context of two daughters' wrongful death and survivorship claims against Robert Lawrence, and the daughters' wrongful death, survivorship, and 42 U.S.C. § 1983 claims against employees of the Texas Department of Criminal Justice in an action stemming from the murders of the daughters' parents by Brian Erickstad and Lawrence. 2002 ND 101, ¶¶ 2, 12, 645 N.W.2d 223. The district court ruled the daughters' allegations against the Texas defendants did

not subject those defendants to tort liability, but the court did not resolve the daughters' claims against Lawrence and granted the daughters' request for Rule 54(b) certification regarding the disposition of their claims against the Texas defendants. *Id.* at ¶ 5. We held the court did not abuse its discretion in granting the certification:

> As this appeal is presently postured, the trial court has ruled that the Texas defendants had no duty to the daughters, and that the daughters' allegations against the Texas defendants do not subject them to tort liability. The Texas defendants therefore cannot be said to have "contributed to the injury" within the meaning of N.D.C.C. § 32–03.2–02 based upon the trial court's ruling on the issue of duty. Although Lawrence may be entitled to raise an "empty chair" defense against Brian Erickstad, in this posture Lawrence cannot raise an empty chair defense against the Texas defendants. Any evidence about the Texas defendants' potential liability would be irrelevant, and the trial court would not be required to instruct the jury to determine a percentage of fault attributable to the Texas defendants. In this posture, no allocation of fault to the Texas defendants could occur, and a determination that Lawrence, or Lawrence and Brian Erickstad, were 100 percent at fault without a consideration of the potential fault of the Texas defendants would not render moot issues about the Texas defendants' potential fault. Under those circumstances, any personal jurisdiction issues stemming from resolution of the Texas defendants' duty will be present regardless of the outcome of the claims against Lawrence and will not be mooted or made advisory by future developments in the trial court.

*Hansen,* at ¶ 15.

[¶ 12] In *Symington,* 1997 ND 93, ¶ 3, 563 N.W.2d 400, an insured sued his agent and his insurer regarding coverage under a farm property policy. The insured alleged the insurer's farm policy provided coverage for a loss and, alternatively, if the policy did not provide coverage, the agent had negligently failed to procure coverage and had misrepresented that coverage had been provided. *Id.* The district court granted partial summary judgment for the insurer, concluding the policy did not provide coverage for the insured's loss. *Id.* at ¶ 4. The court certified the partial summary judgment on the claim against the insurer under Rule 54(b) without deciding the claim against the agent. *Id.* We concluded the court did not abuse its discretion in granting a Rule 54(b) certification:

> We agree with the trial court that [the insured's] remaining claims against [the agent], although contingent upon a determination that [the insurer's] farm policy did not provide coverage to [the insured], are separate and distinct from the issue of coverage. [The insured's] claims against [the agent] allege negligent failure to procure coverage and misrepresentation that coverage had been provided. No matter how those remaining contingent claims against [the agent] are decided, the coverage issues raised in this appeal will always need to be resolved and will never be mooted by future developments in the trial court. Instead, the converse is true. A decision on [the insured's] remaining contingent claims against [the agent] will be unnecessary if there is coverage under [the insurer's] policy. In this posture, our appellate resolution of the coverage issue now will not result in an advisory opinion. Under the framework of *Woell,* we conclude the trial court did not abuse its discretion in granting Rule 54(b) certification to allow appellate determination of the coverage issue before further

proceedings on the contingent claims against [the agent].

*Id.* at ¶ 8 (citations omitted).

■ [¶ 13] "A common thread in our cases reviewing Rule 54(b) certifications is our strong policy against piecemeal appeals, and our aversion to rendering advisory opinions in cases where future developments in the trial court may moot the issues raised for appellate review." *Hansen*, 2002 ND 101, ¶ 10, 645 N.W.2d 223. That policy against piecemeal appeals may be satisfied when the certified judgment fully decides an entire claim. *See Brummund*, 2008 ND 224, ¶ 9, 758 N.W.2d 735; *Choice Fin. Group*, 2005 ND 90, ¶ 9, 696 N.W.2d 504; *Hansen*, at ¶ 15; *Symington*, 1997 ND 93, ¶ 8, 563 N.W.2d 400.

■ [¶ 14] Here, the district court completely decided Citizens State Bank's guaranty claim against Myron Symington without deciding the contingent fraudulent conveyance claim against the trustees of his irrevocable trust. The court thereafter granted a Rule 54(b) certification, explaining:

8. There is just no reason to delay entry of a final judgment on the Court's Order Granting Partial Summary Judgment . . . granting a money judgment in favor of the plaintiff Citizens State Bank–Midwest against the defendant Myron Symington.

9. Prejudice and undue hardship could result to Myron Symington if certification is denied as, unless Myron Symington is able to file an appeal and stay the money judgment entered in this matter pending an appeal, [Citizens State Bank] will be able to levy on Myron Symington's assets, before a final determination of the [Bank's] entitlement to judgment, and will also allow the [Bank] to obtain personal financial informa-

tion from Symington through the litigation of count two of the complaint.

10. In the event Myron Symington is successful on appeal and prevails on the merits of the count one issues, or simply obtains a reversal on the granting of the partial summary judgment, this court would grant the Motion to File the Amended Answer. If this court would have denied the [Bank's] Motion for Partial Summary Judgment, it would have allowed the filing of the amended answer. The [Bank] could request more discovery time if necessary so the amended answer would not prejudice the [Bank].

11. In the event Myron Symington is successful on appeal and ultimately prevails on the merits of the count one issues, certification will result in a savings in judicial administrative time as count two on the complaint will not need to be considered and will be moot. In the event the partial summary judgment motion ruling is reversed and the amended answer filed, the trial would potentially need to include evidence on [Myron Symington's] affirmative defenses at any trial. This request for Rule 54(b) Certification is not done for the purpose of delay.

[¶ 15] The district court's statement about the authority of Citizens State Bank to levy on Myron Symington's assets represents a misstatement regarding the finality of the guaranty claim without a Rule 54(b) certification. *See Striegel*, 343 N.W.2d at 787 (stating absence of proper Rule 54(b) certification precludes execution on judgment or order that does not dispose of all claims). Nevertheless, the

district court's remaining explanation is sufficient to understand the basis for its decision and supports certification. The relationship between Citizen State Bank's guaranty claim against Myron Symington and the Bank's contingent fraudulent conveyance claim against the trustees of his irrevocable trust does not arise from the "same series of transactions and occurrences," is not "logically related legally and factually," and is not "closely intertwined." *See Janavaras,* 449 N.W.2d at 581. Rather, the two claims involve separate transactions that are only related because the contingent fraudulent conveyance claim may be an aid in collection of the guaranty claim against Myron Symington. *See* N.D.R.Civ.P. 18(b). The guaranty issues raised in this appeal will always need to be resolved and will never be mooted by future developments in the district court regarding the fraudulent conveyance claim. *See Hansen,* 2002 ND 101, ¶ 15, 645 N.W.2d 223; *Symington,* 1997 ND 93, ¶ 8, 563 N.W.2d 400. As in *Symington,* the converse is true: a decision on the remaining contingent claim for a fraudulent conveyance will be unnecessary if Myron Symington prevails on the guaranty claim and immediate appellate resolution of the guaranty claim will not result in an advisory opinion. *See Symington,* at ¶ 8. Future district court developments on the fraudulent conveyance claim will not moot the need for review of the guaranty claim, will not require this Court to review the guaranty claim again, and will not result in a setoff against the guaranty claim. Those factors militate in favor of certification in the interest of sound judicial administration and the framework of *Woell,* and we conclude the district court did not abuse its discretion in granting the Rule 54(b) certification to allow immediate appellate review of the guaranty claim.

## III

[¶ 16] Myron Symington argues the district court erred in granting summary judgment on the guaranty claim. He argues the court erred in refusing to consider extrinsic evidence. He claims the circumstances of the loan agreements and the guaranty create an ambiguity, he was induced by Hughes' statements to sign the guaranty, and the record supports a finding of fraud or mistake. He asserts the unrefuted evidence in the affidavits submitted by him establish that his agreement with the Bank was limited to guaranteeing $20,000 for one load of raw materials for Westwood and there were ambiguities in the Bank's own files and the factual background for the two loans. Citizens State Bank responds that Myron Symington's claims are affirmative defenses and are not properly before this Court, because he failed to raise those defenses in his answer and the district court did not grant his motion to amend his answer to plead those defenses. The Bank also argues the district court properly refused to consider extrinsic evidence because the guaranty is clear and unambiguous. The Bank claims Myron Symington must show an ambiguity within the four corners of the guaranty rather than the loan circumstances and he cannot rely on claimed oral statements merely because he failed to read the guaranty.

[¶ 17] The district court discussed Myron Symington's claimed defenses in its decision granting summary judgment and then said in light of its ruling "the Motion to Amend the Answer would appear moot." In granting the Rule 54(b) certification, the district court also said the "Motion to File the Amended Answer is GRANTED in the event" the Supreme Court reverses the summary judgment. The district court effectively decided the issues raised by Myron Symington's amended answer, and we conclude those issues are properly

before this Court in the context of the district court's decision to grant summary judgment.

■■■ [¶ 18] We review the district court's decision on Citizens State Bank's guaranty claim under the standards for summary judgment, which "is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if resolving factual disputes will not alter the result." *Tarnavsky v. Rankin*, 2009 ND 149, ¶ 7, 771 N.W.2d 578. Whether the district court properly granted summary judgment is a question of law that we review de novo on the record. *Id.* A party moving for summary judgment must establish there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Id.* In determining whether summary judgment is appropriate, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which reasonably can be drawn from the record. *Id.* at ¶¶ 7, 8. However, if the movant meets its initial burden of showing the absence of a genuine issue of material fact, the opposing party may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact. *Id.* at ¶ 8. A "court must also consider the substantive evidentiary standard of proof when ruling on a motion for summary judgment." *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 9, 703 N.W.2d 330. "In considering the substantive standard of proof, the court must consider whether the trier of fact 'could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not.'" *Id.* (quoting *Estate v. Stanton*, 472 N.W.2d 741, 743 (N.D.1991)).

■■■ [¶ 19] A contract to answer for the debt of another must be in writing and signed by the party to the charged. N.D.C.C. § 9–06–04(2). Under N.D.C.C. § 9–06–07, "[t]he execution of a contract in writing ... supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Section 9–06–07, N.D.C.C., in part, codifies the parol evidence rule, *see Gajewski v. Bratcher*, 221 N.W.2d 614, 626 (N.D.1974), which is "a rule of substantive law and precludes use of evidence of prior oral negotiations and agreements to vary the terms expressed in a written contract." *Des Lacs Valley Land Corp. v. Herzig*, 2001 ND 17, ¶ 7, 621 N.W.2d 860. This Court has explained the parol evidence rule:

> " ' " "Where parties, *without any fraud or mistake*, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement:' ... 'all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and *unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.*" ' " ' "

> . . . .

> The parol evidence rule is founded on experience and public policy and created by necessity, and it is designed to give certainty to a transaction which had been reduced to writing by protecting the parties against the doubtful veracity and the uncertain memory of interested witnesses.

We have approved and applied this rule in the interpretation of § 9–06–07, N.D.C.C., and have held:

"Where a written contract is complete in itself, is clear and unambiguous in its language and contains mutual contractual covenants agreed upon, such parts cannot be changed by parol testimony, nor new terms added thereto, in the absence of a clear showing of fraud, mistake or accident."

*Des Lacs Valley Land Corp.*, at ¶ 8 (quoting *Gajewski*, at 626 (citations omitted)).

[¶ 20] A court may consider parol evidence when a written agreement is ambiguous, or when the written agreement does not reflect the parties' intent because of fraud, mistake, or accident. *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 12, 736 N.W.2d 441. *See* N.D.C.C. § 9–07–05 ("When through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded."). Although a party cannot claim ignorance because of a failure to read a guaranty, *see Pioneer Credit Co. v. Medalen*, 326 N.W.2d 717, 719 (N.D.1982); *First Nat'l Bank & Trust Co. v. Hart*, 267 N.W.2d 561, 563 (N.D.1978), parol evidence is admissible to show the inducement for entering a contract. *Smith v. Michael Kurtz Constr. Co.*, 232 N.W.2d 35, 39–40 (N.D. 1975). Parol evidence also can be used to show mistake or fraud and for reformation. *Anderson v. Selby*, 2005 ND 126, ¶¶ 8, 9, 700 N.W.2d 696 (reformation); *Des Lacs Valley Land Corp.*, 2001 ND 17, ¶ 10, 621 N.W.2d 860 (parol evidence not admissible to contradict unambiguous grant in deed where there was no allegation of fraud, mistake, or accident). "The decision to admit parol evidence is a determination of law and is fully reviewable on appeal." *Silbernagel*, at ¶ 12.

[¶ 21] Here, the district court effectively considered the issues and defenses raised in Myron Symington's amended answer and concluded the guaranty was unambiguous without considering Myron Symington's evidence about the alleged statements made to induce him to sign the guaranty. The language of the guaranty purports to guaranty "all obligations" of Westwood. In his affidavit, however, Myron Symington claimed he signed the guaranty after Hughes assured him that all he was doing was helping Barry Symington buy one load of lumber for $20,000. Viewing that evidence in the light most favorable to Myron Symington, we conclude it raises a factual issue about fraud or mistake and his inducement for signing the guaranty. Although fraud ultimately must be established by clear and convincing evidence, *see First Union Nat'l Bank v. RPB 2, LLC*, 2004 ND 29, ¶ 22, 674 N.W.2d 1, we conclude there are disputed factual issues involving Myron Symington's claims and the district court erred in granting summary judgment on Citizens State Bank's guaranty claim.

IV

[¶ 22] Myron Symington argues there was no consideration to support a guaranty for the $165,040 note, because the guaranty was not intended to apply to that note. He argues it is clear the guaranty signed by him was not executed at the same time as the original obligation, which was a series of short-term loans, and consideration distinct from that indebtedness was required for a guaranty of that debt to be enforceable. *See Union Nat'l Bank v. Schimke*, 210 N.W.2d 176, 178–81 (N.D. 1973) (discussing consideration for guaranty). Myron Symington's argument about consideration tracks his argument about

his version of the facts and the admissibility of parol evidence. In view of our resolution of that issue, it is not necessary to consider his argument about a lack of consideration for the $165,040 note.

## V

[¶ 23] Myron Symington argues the Bank was not entitled to recover a late fee of $2,553.41 on the $50,040 note. In view of our resolution of the issues raised in this appeal, we need not consider this issue.

## VI

[¶ 24] We reverse the summary judgment and remand for proceedings consistent with the opinion.

[¶ 25] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

CROTHERS, Justice, concurring specially.

[¶ 26] I agree with the majority opinion due to the unique characteristics of this type of lawsuit. As a result, I caution against reading my concurrence in this decision as a retreat from our long-standing Civil Rule 54(b) jurisprudence and our aversion to piecemeal appeals. *See, e.g., Union State Bank v. Woell,* 357 N.W.2d 234, 236–39 (N.D.1984); *Choice Fin. Group v. Schellpfeffer,* 2005 ND 90, ¶¶ 6–9, 696 N.W.2d 504; *Siewert v. Siewert,* 2008 ND 221, ¶ 33, 758 N.W.2d 691.

[¶ 27] Rule 18(b), N.D.R.Civ.P., permits joinder of remedies and specifically permits "a claim for money and a claim to have set aside a conveyance fraudulent as to the plaintiff, without first having obtained a judgment establishing the claim for money." Citizens State Bank used the procedure provided by the rule to assert both a claim for money damages and for relief setting aside an alleged fraudulent conveyance.

[¶ 28] It can be argued that joinder under Rule 18(b) is permissive rather than mandatory so that Citizens State Bank should be precluded from obtaining partial final judgment because of its choice to bring a multiplicity of claims and remedies in one action. However, it can be argued with equal vigor that this Court—through adoption of Civil Rules 18(b) and 54(b)—created the situation at bar and that a party should not be constrained from utilizing the available procedures and proceedings. I join the latter position and suggest that, if a change is to be made, that change should be removal of the option available under Rule 18(b).

[¶ 29] MARY MUEHLEN MARING, J., concurs.

SANDSTROM, Justice, dissenting.

[¶ 30] Because I believe N.D.R.Civ.P. 54(b) certification was improvidently granted, I respectfully dissent.

[¶ 31] In *Bulman v. Hulstrand Construction,* 503 N.W.2d 240, 241 (N.D.1993) (citations omitted), we noted the long-standing "strong policy against piecemeal appeals" and emphasized that Rule 54(b) certification is an "extraordinary remedy" reserved for the "infrequent harsh case" when there is "no just reason for delay." We held that potential mootness is a just reason for delay, making Rule 54(b) certification improvidently granted. *Id.* at 242.

[¶ 32] A Dictionary of Modern Legal Usage defines mootness as "the fact or quality of having no practical importance." *A Dictionary of Modern Legal Usage* 572 (2d ed. 1995).

[¶ 33] The partial summary judgment has given the plaintiffs a money judgment against Myron Symington. But, as the plaintiffs not only concede but plead, My-

ron Symington is insolvent (his "liabilities exceeding his assets"). Without the plaintiffs prevailing on the unresolved "fraudulent transfer" claim, the money judgment is not going to be paid.

[¶ 34]   By ruling the Rule 54(b) certification was improvidently granted, no harsh result follows. The partial summary judgment for money is not going to be paid until after the fraudulent-transfer claim is decided, if at all.

[¶ 35]   By ruling the Rule 54(b) certification was appropriate, no matter which way we decide, more appeals are going to follow.

[¶ 36]   If we were to affirm the partial summary judgment, then the fraudulent-transfer claim must be resolved in the district court. No matter which way the district court decides, another appeal is likely to follow.

[¶ 37]   If we reverse the partial summary judgment (as the majority opinion does), then the case goes back to the district court for trial. If the district court tries both counts together, then no matter which way the trial goes, another appeal is likely to follow.

[¶ 38]   And, if we do reverse the partial summary judgment, the case goes back to the district court, and following the reasoning of the district court and the majority opinion, the case may well be bifurcated for trial under N.D.R.Civ.P. 42(b). Then whichever way the trial turns out, the losing side will appeal, and under the majority's and district court's analysis, Rule 54(b) certification will be appropriate. If on that second appeal the plaintiffs prevail, then the case will go back for trial on the fraudulent-transfer claim. No matter which way the second trial goes, the losing party will appeal again.

[¶ 39]   Although there is no harsh result from holding Rule 54(b) certification improvidently granted, treating it as appropriate will almost certainly result in a second appeal, with a significant prospect of a third appeal.

[¶ 40]   I would dismiss the appeal.

[¶ 41]   DALE V. SANDSTROM